Kenneth **LEHRMAN**, Plaintiff-Appellee,

v.

**GULF OIL CORPORATION,**
Defendant-Appellant.

No. 73-2822.

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1974.

Rehearing and Rehearing En Banc
Denied Nov. 5, 1974.

John B. McNamara, Jr., Waco, Tex., W. B. Edwards, Catherine C. McCulley, John E. Bailey, Houston, Tex., for defendant-appellant.

Jack N. Price, Longview, Tex., Charles M. McDonald, Waco, Tex., for plaintiff-appellee.

Before GEWIN, THORNBERRY and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

## I

This is the second appeal in this case, and we are now concerned only with the issue of damages. The first appeal arose out of a treble damage antitrust action filed by Mr. Kenneth Lehrman under Section 1 of the Sherman Act[1] against the Gulf Oil Corporation (Gulf) alleging that Gulf's complicated system of setting wholesale prices for its gasoline was used as a mechanism for fixing the retail prices at which station operators like Lehrman resold the gasoline. He alleged that these illegal pricing policies drove him out of his service station business in Mart, Texas, by making it impossible for him to compete with the prices charged by other stations in his area.[2] After the initial jury trial a verdict was returned in Lehrman's favor in the amount of $60,000 in compensatory damages, but the district court set aside this verdict, reduced the award, and entered a judgment for Lehrman for the sum of $21,000–$63,000 trebled.

Gulf appealed to this court[3] raising the questions of jurisdiction and liability. Both parties to the previous appeal complained of the district court's treatment of the damages assessed against Gulf. This court concluded that the dis-

---

1. 15 U.S.C. § 1.

2. The facts of this controversy have been thoroughly detailed in an opinion resulting from the prior appeal, and little purpose would be served by repeating them here.

*See* Lehrman v. Gulf Oil Corp., 464 F.2d 26, 29 (5th Cir. 1972).

3. Lehrman v. Gulf Oil Corp., 464 F.2d 26 (5th Cir. 1972).

trict court did not lack subject matter jurisdiction and that Gulf was indeed liable for an antitrust violation. We found it necessary, however, to remand the cause for further proceedings restricted to the question of the proper measure of Lehrman's damages. Although our opinion emphasized the principle that courts are "to take a charitable view of the difficulties of proving damages in a case when a treble-damage plaintiff must try to prove what would have accrued to him in the absence of the defendant's anticompetitive practice," it was concluded that "we must at least insist upon 'a just and reasonable estimate of the damage based on reasonable data.' ".[4]

Specifically, on the first appeal this court found that there should have been an allowance in the original jury verdict for mitigation of Lehrman's damages by the amount of his earnings in his current line of work.[5] Moreover, it was determined that the district court's remittitur was inappropriate. Without noting any other specific criticism of the evidence on damages we offered the following observations in the concluding portion of the opinion:

> At the new trial, Lehrman may introduce additional evidence to provide the jury with a better "yardstick" to measure Lehrman's losses. There may be additional evidence to clarify the possible length of Lehrman's future tenure in the station and therefore the appropriate duration of future profits. Additional evidence will likely be necessary to provide some measure of the deduction from Lehrman's damages which must be attributed to the present and future earning capacity

he now has which he would not have enjoyed had he continued to look chiefly to the station for his income and to devote most of his time to its operation.

With our former opinion as a guide the case was retried on the damage issue only. Lehrman attempted to remedy the specially enumerated defect in his prior proof by introducing evidence of his alternative sources of income. A second jury returned a verdict for $40,000 and a treble damage judgment of $120,000 was entered by the court. Gulf has appealed again, and today we must decide whether Mr. Lehrman's efforts on retrial to prove his damages comply with standards prescribed by our previous opinion and by sound precedent. We feel that they do and affirm.

## II

■■ Before addressing Gulf's contentions, however, we should briefly discuss the "law of the case" doctrine which plays an important role in subsequent appeals. This laudable and self-imposed [6] restriction is grounded upon the sound public policy that litigation must come to an end. An appellate court cannot efficiently perform its duty to provide expeditious justice to all "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal." [7] Not only does the doctrine promote judicial efficiency but it also discourages "panel shopping" at the circuit level, for in today's climate it is most likely that a different panel will hear subsequent appeals.[8]

Nevertheless, there are important boundaries to the scope of the doctrine.

---

4. *Id.* at 46 (citation omitted).

5. *Id.* at 46. Failure to instruct the jury to include such a deduction was labeled "the only defect in the lower court's charge to the jury." *Id.* at 47.

6. Zarzaur v. United States, 493 F.2d 447, 453–454 (5th Cir. 1974). Although the federal courts generally refuse to reopen issues that have been previously decided on appeal, it is within their power to do so. 1B J.

Moore, Federal Practice ¶ 0.404 [10], at 573 (2d ed. 1974) ; 9 J. Moore, Federal Practice ¶ 110.25 [2], at 275 (2d ed. 1973).

7. White v. Murtha, 377 F.2d 428, 431 (5th Cir. 1967) recently cited with approval in Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 19 (5th Cir. 1974).

8. Zarzaur v. United States, 493 F.2d 447, n. 15 (5th Cir. 1974).

In the federal courts, for example, the law of the case does not carry the same consequences as the rule of res judicata; it does not preclude a second review if considerations of substantial justice warrant it.[9] More important to the instant case is the limitation that the doctrine does not include all questions which were present in a case and which might have been decided but were not.[10] As a general rule if the issues were decided, either expressly or by necessary implication, those determinations of law will be binding on remand and on a subsequent appeal.[11]

### III

Gulf has massed a repetitive and caustic assault upon Lehrman's case, but its contentions can be distilled into three broad categories: (1) improper jury instructions; (2) the admission of allegedly improper evidence, particularly "yardstick" evidence; (3) the allegedly undue speculation on which the jury verdict is based. The jury instructions are asserted to be deficient in four respects: (1) going concern value should be the only measure of damages, not future profits; (2) the jury should be instructed on the present value concept; (3) the charge allowed the jury to award duplicative damages; (4) an instruction on treble damages should have been given.

■ The first of these assertions—inappropriateness of future profits as a measure of damages—is clearly without merit. Initially, we feel that the law of the case has been clearly established here. Gulf objected to the use of future profits on the first appeal but we rejected the challenge and stated:

Gulf raises several objections to the damage calculation. First, it objects to the use of future profits as a measure of Lehrman's damages because, it contends that allowing Lehrman to recover for future profits would enable a proprietor who has been the victim of a single anticompetitive practice to walk away from his business and collect damages for future profits despite the possibility that the business might still be operated successfully. Gulf stresses that the cases which have allowed future profits as a measure of antitrust damages have been cases involving refusals to deal, or cancellation of leases, both of which practices rendered it impossible for the proprietor who had been damaged to continue in business.

We do not accept Gulf's restrictive application of the principle of future profits as antitrust damages. (footnote omitted) [12]

Indeed, *Lehrman* is cited in Terrell v. Household Goods Carriers' Bureau [13] as support for the proposition that lost future profits are an appropriate measure of damages.

■■ Even if we did not feel constrained by the strong policy against continuous relitigation we would still reject Gulf's contention on the merits. Clearly, going concern value and lost future profits are each viable alternative

---

9. Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 19 (5th Cir. 1974); 1B J. Moore, Federal Practice ¶ 0.404 [1], at 405–06 (2d ed. 1974) (not res judicata); 9 J. Moore, Federal Practice ¶ 110.25 [2], at 275 (2d ed. 1973) (Reconsideration may be warranted). *Also see* note 6, *supra*.

10. Hartford Life Ins. Co. v. Blincoe, 255 U.S. 129, 136, 41 S.Ct. 276, 65 L.Ed. 549 (1921); Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 19 (5th Cir. 1974); Connett v. City of Jerseyville, 110 F.2d 1015, 1018 (7th Cir. 1940); 1B J. Moore, Federal Practice ¶ 0.404 [10], at 573 (2d ed. 1974).

11. Diplomat Electric, Inc. v. Westinghouse Electric Supply Co., 430 F.2d 38, 48 (5th Cir. 1970). Of course if as *Diplomat Electric* points out, a subsequent panel considers the legal decision clearly erroneous then reconsideration may be warranted as explained in the text accompanying note 9, *supra*. Also *see* Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16 (5th Cir. 1974); 1B J. Moore, Federal Practice ¶ 0.404 [10], at 573 (2d ed. 1974).

12. 464 F.2d 26, 44–45 (5th Cir. 1972).

13. 494 F.2d 16, n. 12 (5th Cir. 1974).

measures of antitrust damages.[14] Future profits cannot be condemned as inordinately more speculative than the going concern value since the former is a crucial component of the latter. In addition going concern or goodwill value may present difficult problems of proof if the lessor of a particular station places restrictive conditions on the transfer of the lease.[15] Finally, future profits accompanied by an award for any decline in asset values will often more fully compensate a businessman by measuring his lost earnings, not just what it is worth to someone else to reach for those earnings.[16]

■ Gulf also claims that the jury should have been instructed to award only the present value of lost future profits, and we agree that this would be the better practice. But we do not find this issue raised in Gulf's objection to the court's charge. Even assuming the matter is properly preserved we find the error harmless in light of the complex proof.

■ Pointing to the following instruction, Gulf assigns as a third defect the contention that the court permitted the jury to award duplicative damages:

. Our law permits the jury to take into account both any damages which

may have been inflicted on existing property and the damages which may have been sustained as a result of being unable to make profit which may reasonably could have been (sic) anticipated and would have been realized if it were not for the violation of the antitrust laws.

Of course, 15 U.S.C. § 15 provides that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor. . . ." But Gulf contends that the above quoted instruction by the district court permits the jury to award damages for both lost future profits and going concern value. Courts have recognized that future profits are a principal element in going concern value.[17] Thus, it is clear that an award including both is inappropriately duplicitous.

Before examining the instruction to see whether it permits such duplication we should consider the possible application of the law of the case. The allegedly duplicative and defective instruction was quoted at length by this court on the first appeal.[18] Our decision expressly stated that the only error in the charge was the failure to instruct the jury to deduct a reasonable amount attributable to Lehrman's earnings after

14. *Id.;* Note, Private Treble Damage Antitrust Suits: Measure of Damages for Destruction of All or Part of a Business, 80 Harv.L.Rev. 1566, 1577 (1967). We, of course, realize that because future profit potential is a principal element of a firm's going concern value an award should not include both. Albrecht v. Herald Co., 452 F.2d 124 (8th Cir. 1971). Also see the discussion at p. 664, *infra.*

15. *Cf.* Frank Coulson, Inc.—Buick v. General Motors Corp., 488 F.2d 202 (5th Cir. 1974). Restrictions might include approval of future transferees and attempts to influence transfer price. *Id.*

The evidence indicates that Lehrman's lease was of the "evergreen" variety, so designated because they are customarily renewed from year to year. Upon this record the jury could easily conclude that though there was a theoretical possibility of early termination by Gulf, in the practical business context it would be much more likely

that the lease would be continuously renewed throughout his career. *See* Note, Private Treble Damage Antitrust Suits, *supra* note 14, at 1578.

16. *See* Note, Private Treble Damage Antitrust Suits, *supra* note 14, at 1581. Gulf asserts that personal factors are clearly inappropriate for consideration here just as they are in eminent domain proceedings. This analogy, however, ignores the different public policies at work in eminent domain and in antitrust suits. Factors which are speculative and appeal to sympathy are excluded in eminent domain proceedings to avoid an undue drain on the public treasury. Arguably in the private enforcement of our antitrust laws a more liberal test of damages should apply. *Id.* at n. 80.

17. Albrecht v. Times Herald, 452 F.2d 124, 129 (8th Cir. 1971).

18. Lehrman v. Gulf Oil Corp., 464 F.2d 26, n. 14 (5th Cir. 1972).

leaving the gas station business.[19] Since we decided to reverse because the instructions did not include that mitigating factor our conclusion as to the absence of other defects may not have been absolutely necessary, but it was explicit.[20]

Principles of sound judicial administration require that when a Court of Appeals identifies the only defect in a trial court's charge, the trial court should feel secure in following that mandate, confident that until revised by higher authority it will be respected by all panels. Nevertheless, Gulf maintains that a re-trial on damages is an entirely new "ball game." Second, it suggests that the court's statement is of little importance because Gulf did not specifically direct the court's attention to the language awarding duplicative damages.[21]

Gulf's position that a re-trial on damages wipes the slate clean is clearly inaccurate as to matters of law as we have previously explained. Gulf's second argument presents a closer question. As noted, the doctrine of the law of the case applies only to the issues decided, not to all those presented for decision but left unanswered.[22] A strong argument can be made that this court's express statement decided the present jury instruction issue even though it was not argued or briefed. Even if we should agree, however, that the court's explicit pronouncement on the trial court's instruction was premature and should not be strictly followed because argument was not presented, it would not change the result here because we find the instruction appropriate.

The instruction does not allow duplicative damages if property loss is taken to mean loss on tools and equipment.[23] Although Lehrman indicated he was "satisfied" with the sales price he received for his tools there is some evidence that they might have been worth more.[24] Only if property [25] is considered to be inclusive of the going concern value of the station would the instruction permit a duplicative award. Going concern value, of course, is drawn heavily from the business community's estimate of future profit potential. But it is clear here that no duplicative inference was to be drawn. In light of the entire instruction and counsel's argument it is clear that lost profit was virtually the exclusive element of damage. Lehrman opposed references to going concern value at every turn. Given this particular phrasing a clarifying definition of property [26] might have been appropriate, but its omission here was clearly harmless to Gulf.

The fourth objection to the instructions is that the court committed reversible error when it refused to instruct

19. *Id.* at 47.

20. *See* text accompanying note 11, *supra.*

21. Not only did Gulf fail to raise the issue on the first appeal but in its brief on the first appeal it was intimated that the court correctly charged the jury that injury may be to business or property. Furthermore, Gulf again failed to specifically object to this portion of the charge at the second trial. While we are aware that legal issues rarely permit instant analysis we feel that the timing of this objection gives some indication of its *de minimis* nature.

22. *See* note 10, *supra.*

23. *See* Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 567, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

24. Lehrman allegedly received less than the depreciated tax value on the tools. Also there is no indication that his equipment was not in proper functioning order.

25. For a discussion of the definition of business or property under the antitrust statutes *see* Martin v. Phillips Petroleum Co., 365 F.2d 629 (5th Cir. 1966).

26. *See* Cape Cod Food Products v. National Cranberry Ass'n, 119 F.Supp. 900, 911 (D. Mass.1954) where almost identical language was used in the damage instruction. The court endeavored, however, to further explain the phrase.

the jury that any jury verdict would be trebled by the court under section 4 of the Clayton Act.[27] Gulf contends that the instruction is necessary because "the jury should know what the law is." Defendants generally desire such an instruction hoping it will tend to lower the verdict.[28] Plaintiffs naturally fear just such a result. Gulf argues that this circuit has given its tacit approval to a treble damage instruction by quoting in a footnote in North Texas Producers Ass'n v. Young[29] an instruction including such language. Although the charge in *North Texas* informed the jury of the treble damage provision, the judgment was for the plaintiff. The plaintiff-appellee was apparently satisfied with his verdict, and the defendant-appellant had little reason to object. Thus the court had no reason to scrutinize the charge for items that would arguably harm the plaintiff and aid the defendant. This issue was not presented to the court for review.

In the present case by contrast, the treble damage instruction was not given, and had it been given it would arguably aid the losing party, Gulf. Yet the only defect in the damage instruction identified by our previous opinion was the failure to allow for the mitigation of damages by the amount of Lehrman's earnings after he left the station. As with the question of duplicative damages Gulf reasons that the failure of the court to specifically address the question on the first appeal gives the court's approval of the instruction a limited effect.[30] Similarly, we again emphasize that instructions once approved on appeal generally should be given with confidence on remand;[31] but to so hold is unnecessary because assuming it is appropriate to reach the merits of the treble damage argument, we reject it.

We are aware of the fact that there is a division of authority on the wisdom of giving an instruction on treble damages.[32] Indeed, a divergence of

27. 15 U.S.C. § 15 provides, "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

28. In fact it has been argued that the mandatory nature of treble damages results in some unfortunate and counterproductive resistance to private antitrust actions. Note, Private Treble Damage Antitrust Suits, *supra* note 14, at 1569.

29. 308 F.2d 235, n. 5 (5th Cir. 1962).

30. Like the duplicative damages contention this treble damage issue was not raised in the first appeal. Unlike the duplicative award argument, however, the absence of a treble damage charge drew Gulf's specific objection in the second trial. *See* note 21, *supra.*

31. See p. 664, *supra.*

32. Distinguished authorities that favor informing the jury of the treble damage provision in the antitrust law include 2 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § .85.28, at 265 (2d ed. 1970) and their predecessor W. Mathes, Jury Instructions and Forms for Federal Civil Cases, 28 F.R.D. 401, 467 (1961). Cases approving such an instruction are Bordonaro Bros. Theatres v. Paramount Pictures, 203 F.2d 676 (2d Cir. 1953) and Cape Cod Food Products v. National Cranberry Ass'n, 119 F.Supp. 900 (D.Mass.1954). One commentator has suggested that whether or not the jury is explicitly informed of the provision's existence, it is unreasonable to assume they will not learn of it during the trial. Note, Private Treble Damage Antitrust Suits, *supra* note 14, at 1569, n. 20.

Cases disapproving such an instruction include the following: Standard Industries, Inc. v. Mobil Oil Corp., 475 F.2d 220 (10th Cir. 1973) (Error to give such an instruction but harmless); Semke v. Enid Auto Dealers Ass'n, 456 F.2d 1361, 1370 (10th Cir. 1972); Sablosky v. Paramount Film Distributing Corp., 137 F.Supp. 929, 942 (E.D.Pa.1955) and Webster Motor Car Co. v. Packard Motor Car Co., 135 F.Supp. 4, 11 (D.D.C.1955), rev'd on other grounds 100 U.S.App.D.C. 161, 243 F.2d 418 (1957). *See also* Richfield Oil Corp. v. Karseal Corp., 271 F.2d 709 (9th Cir. 1959). Although the issue is not explicitly discussed in *Richfield Oil*, a damage instruction without a treble damage provision is labeled as fair, accurate and presenting fully the applicable law. In *Richfield Oil* the verdict was

opinion developed within a single district.[33] One suggestion to resolve the issue is to inform the jury of the provisions of 15 U.S.C. § 15 followed by an instruction to disregard the treble damage provision in their deliberations.[34] Like many such cautionary instructions the primary result of this suggestion may be to emphasize the provision in the jury's mind;[35] thus we find it unsatisfactory to accept this solution without an analysis of the need for the underlying treble damage instruction.

Although the treble damage provision may be partially justifiable on compensatory grounds,[36] its principal purpose is to deter antitrust violations.[37] The prospect of a damage award multiplied three-fold should provide an incentive for private parties to instigate costly and uncertain litigation, thus supplementing Governmental enforcement.[38] If, as everyone seems to assume, mentioning the trebling provisions would lower jury verdicts then the very purposes for which the provision is designed may be frustrated. While we cannot know with certainty what effect such an instruction will have on a particular jury or even juries in general, it is clear that it is the duty of the judge, not the jury, to perform the mandatory trebling. The jury only determines the amount of compensatory damages.

We agree with the Tenth Circuit's statement in Semke v. Enid Auto Dealers Ass'n,[39] that "it serves no useful function to communicate this information to the jury and it is potentially harmful, . . . ." In *Semke* the district court had given the instruction and this was determined to be error, but harmless error.[40] Thus we conclude that the failure to give an instruction on treble damages is not reversible error.

## IV

Next we turn to Gulf's protest of Lehrman's method of proof, particularly his alleged use of "yardstick" evidence. There are two generally recognized methods of proving lost profits: (1) the before and after theory; and (2) the yardstick test. The before and after theory compares the plaintiff's profit record prior to the violation with that subsequent to it. The before and after theory is not easily adaptable to a plaintiff who is driven out of business before he is able to compile an earnings record sufficient to allow estimation of lost profits. Therefore, the yardstick test is sometimes employed. It consists of a study of the profits of business operations that are closely comparable to the plaintiff's. Although allowances can be made for differences between the firms, the business used as a standard must be as nearly identical to the plaintiff's as possible.

Lehrman's method of proof encompassed elements of both the before and

---

for the plaintiff and the defendant appealed. Pending release of this opinion, another panel of this court reached the same conclusion that we reach. *See* Pollock & Riley, Inc. v. Pearl Brewing Co., 498 F.2d 1240 (5th Cir. 1974).

33. Prior to Pollock & Riley, Inc. v. Pearl Brewing Co., *supra* note 32, some Judges in the Western District of Texas seemed to favor informing the jury of the treble damage provision while others did not.

34. *See* W. Mathew, supra note 33 at 467.

35. Although we are not aware of any empirical data to support this supposition, its validity or invalidity seems capable of resolution by social science research techniques. *See generally* J. Weinstein, Hanz Zeisel's Contributions to the Administration of Jus-

tice and the Sociology of Law, 41 U.Chi.L. Rev. 213 (1973).

36. The provision may be necessary because an antitrust violation often involves numerous intangible economic harms which the jury's verdict may not adequately reflect. Note, Private Treble Damage Antitrust Suits, *supra* note 14, at 1566.

37. *See* Semke v. Enid Auto Dealers Ass'n, 456 F.2d 1361, 1370 (10th Cir. 1972).

38. Kinnear-Weed Corp. v. Humble Oil and Refining Co., 214 F.2d 891, 893 (5th Cir. 1954).

39. 456 F.2d 1361, 1370 (5th Cir. 1972).

40. *Semke* was followed by the Tenth Circuit in Standard Industries, Inc. v. Mobil Oil Corp., 475 F.2d 220, 223 (1973).

after theory and the yardstick theory, but it was not a classic example of either.[41] His expert accountant relying on the history of the station and testimony from witnesses prepared a schedule representing sales volumes of fifteen, twenty and thirty thousand gallons per month. In the station's best previous month only fifteen thousand gallons had been sold, but Lehrman believed he could sell more and one of Lehrman's competitors testified that if Lehrman had been able to post competitive prices consistently he could have sold twenty-five thousand gallons per month. For each volume level, profits were computed by using margins of three, four and five cents per gallon, and the margin assumptions were adequately based on the station's past experience. The margins included rent expense under the station's lease agreement with Gulf, but a schedule of other expenses was prepared in order to forecast the potential for net profit. Rather than relying exclusively on Lehrman's past expenses the expert accountant correlated his station expense data with that of three others with which the expert was familiar in order to establish average monthly expense data for service stations. No attempt was made to correlate volume, margin or profit from the other stations; only the expense figures were used. Thus Lehrman's method of proof was not a traditional model of the yardstick theory.[42]

Reliance upon past volumes, margins and expenses in order to forecast future profits without emphasis on past profits is not the usual before and after method either. Just because Lehrman's method of proof is specially tailored to fit his case, however, does not render it unacceptable. Indeed, this court has recognized that the task of proving sales never made as a means of calculating damages is a difficult one.[43] Thus, "while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." [44] The proof may be indirect and it may include estimates based on assumptions, so long as the assumptions rest on adequate data.[45] Lehrman's expert's estimates of lost future profits were based on assumptions regarding volume of gasoline sold, margin and station expense. These assumptions were unquestionably open to challenge and Gulf did challenge them before the jury. Evidentiary support for the assumptions also exists, and we perceive the resolution of the conflicting claims as the traditional responsibility of the jury.

Notwithstanding the foregoing principles Gulf vigorously protests the admission of Lehrman's evidence labeling it immaterial, irrelevant and prejudicial. First it contends that if future profits are appropriate for consideration, a point it does not concede,[46] it should only be under a before and after model, not a yardstick theory. Since be-

---

41. The two damage theories were used in conjunction in Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

42. For a good example of the yardstick method *see* Richfield Oil Corp. .v. Karseal Corp., 271 F.2d 709 (9th Cir. 1959), cert. denied, 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed.2d 543 (1960).

43. Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 23 (5th Cir. 1973).

44. Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).

45. Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 24 (5th Cir. 1974); Hobart Brothers Co. v. Malcolm T. Gilliland Inc., 471 F.2d 894, 902 (5th Cir. 1973); Locklin v. Day-Glo Color Corp., 429 F.2d 873, 879 (7th Cir. 1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 584, 27 L.Ed.2d 632; Herman Schwabe, Inc. v. United Shoe Machinery Corp., 297 F.2d 906 (2d Cir. 1962), cert. denied, 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 85.

46. Gulf does not abandon the position it took in regard to the instruction: future profit is only relevant as a component of going concern value. Gulf continues to maintain that

fore and after evidence is available and allegedly much more reliable than yardstick evidence Gulf feels it should be the exclusive method of proof. It asserts that Lehrman's station had been in existence long enough to establish a reliable track record from which to determine whether or not his business would have made future net profits absent Gulf's violation of the antitrust laws. As Gulf is undoubtedly aware this latter assertion is in direct conflict with the conclusion reached on the first appeal.[47] Moreover, our first decision clearly contemplates the use of "yardstick type" evidence.[48] Although our initial opinion is most likely sufficient to rebut Gulf's argument that only before and after evidence is appropriate, the meritless nature of the claim seems self-evident. The assertion is actually a variation on the theme that a firm had failed to prosper under the weight of an antitrust violation is entitled to no damages because there was no substantial profit record. Judge Goldberg's comment in Terrell v. Household Good Carriers' Bureau [49] is a particularly appropriate rebuttal.

To deny recovery to a businessman who has struggled to establish a business in the face of wrongful conduct by a competitor simply because he never managed to escape from the quicksand of red ink to the dry land of profitable enterprise would make a mockery of the private antitrust remedy.

■ Second, Gulf maintains that even if yardstick evidence is generally appropriate in this case, Lehrman's yardstick evidence was improper because the other stations whose expenses were correlated were not nearly identical or even closely comparable to the Lehrman Gulf station. The one station specifically identified by Lehrman's accountant was Bill Brown's Gulf station in Temple, Texas.[50] Gulf asserts that Temple is a growing community of approximately 30,000 population while Mart, where Lehrman's station was located, has a population of only 2,000. Furthermore, Brown's station is alleged to have sold only two grades of gasoline, regular and premium, while Lehrman sold three. We need not decide whether Brown's

---

although Lehrman was forced out of a station he had operated for eight years, he suffered no damage because the station had enjoyed only meager success, and after its closure he was freed to pursue other more profitable enterprises. We feel this contention has been adequately answered by our discussion of the instruction on future profits and the previous opinion of this court.

47. We clearly stated:
"Particularly is the calculation of damages difficult when the future profits of an enterprise as young as Lehrman's must be determined, since there is no reliable track record to look back on. But uncertainty cannot end the efforts of the federal courts to redress the harm caused proprietors by violations of the freedom of the marketplace. The wrongdoer must bear the risk of the uncertainty in measuring the harm he causes." 464 F.2d at 45.

48. 464 F.2d at 48.

49. 494 F.2d 16, n. 12 (5th Cir. 1974).

50. In its opening brief Gulf correctly informs us that "Bill Brown's station was not a true 'yardstick'; in that the only figures taken from the station on which to base projected

profits were expense figures and *not* the actual gallonage, margin, profit or grades of gasoline sold ratios." (Emphasis in original). Lehrman makes almost identical observations in his brief; the crux of the method being profit comparisons. In its reply brief, however, Gulf apparently disavows its former position and vigorously challenges Lehrman for implying there was no yardstick and for adopting a "no name" theory of damages. Gulf states, "[n]othing could be farther from the truth. Despite Lehrman's protestations to contrary, the record clearly shows that appellee's evidence of projected future net profits was in fact based on a yardstick, Bill Brown's Temple Gulf station." We do not regard the foregoing semantic controversy as the crucial focus in the case. Rather, the inquiry should more appropriately center on whether Lehrman's method of proof, regardless of the label attached is "a just and reasonable estimate of the damage based on relevant data." Bigelow v. RKO Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946); Lehrman v. Gulf Oil Corp., 464 F.2d 26, 46 (5th Cir. 1972); Poster Exchange, Inc. v. National Screen Service Corp., 431 F.2d 334, 340 (5th Cir. 1970).

station and Lehrman's are sufficiently similar to allow collation of profits because the data from Brown's station was not used in that manner. Since only Brown's expense data was utilized by Lehrman's expert we cannot perceive how Gulf was injured by the enumerated differences between the two stations.

Although the precise impact of the Brown expense figures is not clear,[51] it may well be that their use arose from an abundance of caution by Lehrman and inured to the benefit of Gulf. Expenses in a growing community of 30,000 population may exceed those in a rural area. In fact, Lehrman asserts and Gulf does not contest the fact that Brown's expenses were about $5,000 a year more than Lehrman's. It is probably safe to assume, therefore, that the Brown data had an inflationary effect on the expense calculations. Similarly, there is no indication that Brown's expenses were significantly lowered by selling two grades of gasoline instead of three.[52]

▮▮ Third, Gulf complains that "[a]ll the evidence offered by plaintiff as to the future net profit potential of his business was based on events, facts and business developments which occurred after Lehrman left his service station business." Such evidence is alleged to be inadmissible under Standard Oil Co. of Cal. v. Moore.[53] Initially we note, as Gulf is surely aware, that the jury was fully informed of the station's history under Lehrman's operation. The real thrust of Gulf's contention is that expense figures drawn from Brown's station were incurred after Lehrman's station had closed. Gulf has not shown

that this factor in any way deflated the expense figures and thus raised the projected profits. As we have just noted the opposite result is more probable.[54] Moreover, the station had been in existence for a substantial period of time prior to Brown's operation.

*Standard Oil* is inapposite here because in that case going concern value not future profits was the measure of damages. The plaintiff, Moore, sought to establish the market value of his goodwill as of August 15, 1952; in that context opinions based on events, facts and business developments occurring subsequent to that date may indeed be irrelevant. But we do not understand that holding to extend to estimates of expenses used to compute future profits.[55] If we did we would expressly disagree.

## V

▮▮▮▮ In addition to the contention that Lehrman's evidence was immaterial, irrelevant and prejudicial, it is also claimed that it was unduly speculative and conjectural resulting in an excessive verdict. Much of what has been said in the foregoing paragraphs about Lehrman's method of proof applies with equal force to this additional contention. Little purpose would be served in unduly lengthening this opinion by retracing that discussion and responding to each one of Gulf's vitriolic attacks. We have previously outlined how Lehrman projected future earnings by estimating sales volume, dealer margin and expense. Lehrman testified as to his age, health and desire to stay in the business in or-

---

51. The expert's testimony is merely to the effect that the expense data was correlated to arrive at average figures.

52. Assuming for the moment that the margin data was compared as well as expense, the number of grades of gasoline sold still seems irrelevant since Gulf's own witness testified that the dealer's margin is the same on all grades.

53. 251 F.2d 188, 221 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed. 2d 1148 (1958).

54. An additional factor present here is that in the economic climate of the past decade it would be most surprising if expenses had decreased with the passage of time.

55. *See* Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 194 F.2d 846, 855 (8th Cir.), cert. denied, 343 U.S. 942, 72 S. Ct. 1035, 96 L.Ed. 1348 (1952) ; Note, Private Treble Damage Antitrust Suits, *supra* note 14, at n. 79.

der to give some indication of the appropriate duration of future profits.[56] The specific shortcoming in the damage evidence identified on the first appeal was corrected by the introduction of evidence concerning Lehrman's earning capacity after he left the station.[57] Rather than characterize Lehrman's evidence as "rank speculation and utter guesswork" we believe it presents a just and reasonable estimate of damages under difficult circumstances based on relevant data. As this court stated in Terrell v. Household Goods Carriers' Bureau,[58] "the expert on damages need not be armed on the right hand with a slide rule, on the left hand with a computer. He is allowed some economic imagination so long as it does not become fantasy."

■ In regard to the alleged excessiveness of the verdict it is likely that Gulf would consider any amount excessive because it contends that the station had no going concern value. This argument requires no further response. Furthermore, we feel that the $40,000 verdict is well within the jury's province [59] even though arguably generous. There is no indication that the

jury had any bias or prejudice against Gulf, and it was specifically instructed not to guess or speculate on its deliberations. The jury's verdict has a firm basis in Lehrman's projections of lost profits.[60] Interestingly, the verdicts of the two juries who heard this evidence are reasonably consistent. The first jury returned a verdict for Lehrman of $60,000. Upon retrial the jury was instructed to deduct from its verdict a reasonable amount attributable to Lehrman's earnings after leaving the gas station business. Accordingly, the second jury returned a verdict of $40,000. From all appearances this jury seems to have weighed the conflicting and complex evidence and performed as fact finders in the best sense of the Anglo-American tradition.

## VI

To briefly summarize our holding, we conclude that the instructions in this case do not require another reversal for the following reasons: (1) future profits are an appropriate measure of damages; (2) the instructions did not permit duplicative damages to be awarded;

56. The first decision in this case clearly reserved the determination of the duration of future profits to the jury. 464 F.2d at 47. Gulf argues that Lehrman's age, health and personal desires are irrelevant under Standard Oil Co. of California v. Moore, 251 F.2d 188, 219 (9th Cir. 1957). *Standard Oil*, however, held these factors irrelevant to going concern value not to the duration of future profits.

57. Although the verdict was reversed and remanded for a new trial on damages for failure to consider the mitigating factor of Lehrman's new earnings, the court addressed one of the specific contentions that Gulf raises here.

Gulf also protests the "speculative" testimony of Ernest Brown [appellant's expert accountant] and urges us to hold this testimony an inadequate basis for assessing Lehrman's damages. But Gulf merely protests application of the familiar rule that a wrongdoer is responsible for uncertainty in calculating the damages proximately caused by his own wrongdoing. On the facts of the present case, there was evidence from which a jury might conclude that Gulf's decision to punish Lehrman by

means of its TCA system for failure to abide by Gulf's system of "suggested" prices caused the demise of Lehrman's station. Once it is apparent that damages must be assessed so as to approximate the future profits of a business, a court and jury necessarily enter into the realm of the imprecise and the uncertain. 464 F.2d at 45.

58. 494 F.2d 16, 25 (5th Cir. 1974).

59. *See* Lenz v. Southern Pacific Co., 493 F.2d 471, 472 (5th Cir. 1974). The power of an appellate court to review the excessiveness of a verdict is extremely limited. Ross v. Newsome, 289 F.2d 209, 210–211 (5th Cir. 1961). Great caution should be exercised before the appellate courts interfere. St. Louis Southwestern Ry. Co. v. Williams, 397 F.2d 147, 152 (5th Cir. 1968).

60. For example, according to some of the evidence, if Lehrman, a man of thirty-five at the time of the second trial, had operated the station for ten years at a volume of 20,000 gallons per month with a five cent dealer margin, his projected profits were estimated to be $77,480.

**672**

(3) a treble damage instruction was not necessary; (4) although the better practice would be to include a present value instruction, its omission here is not a ground for reversal. Additionally, Lehrman's evidence should not have been excluded on the ground that it was immaterial, irrelevant or prejudicial; nor was it unduly speculative or conjectural. Finally, we have determined that the jury's verdict was not excessive.

Gulf has been adjudicated liable for an antitrust violation. Two juries, a district judge and now six appellate judges have attempted to arrive at a fair damage award within the bounds of some precedent. Further delay would not serve the cause of justice. Accordingly, the judgment of the district court is affirmed.

Affirmed.