Anthony IODICE et al., Plaintiffs,

v.

Peter CALABRESE, Individually, and as Secretary Treasurer of Teamsters and Chauffeurs Local No. 456, and International Brotherhood of Teamsters, Defendants.

No. 67 Civ. 887 (DNE).

United States District Court, S. D. New York, Civil Division.

March 5, 1976.

Greenspan & Aurnou, White Plains, N. Y., for plaintiffs.

John J. Sheehan, New York City, for defendants.

OPINION

EDELSTEIN, Chief Judge:

The court of appeals has remanded this case for a reassessment of plaintiffs'

damages. In this court's earlier decision 345 F.Supp. 248 (S.D.N.Y.1972), plaintiffs' proof of "gross profits" was found to be "so speculative and unsupported as to require rejection." 345 F.Supp. at 271.

In its remanding opinion, 512 F.2d 383 (2d Cir. 1975), the court of appeals wrote:

> The district court obviously found Iodice's testimonial and documentary evidence insufficient to establish precisely how much profit was lost from 1963 until 1969. However, the court did find that during that time the union had engaged in a largely successful campaign to keep business away from Iodice. 345 F.Supp. at 254–55. On remand the district court should "make a just and reasonable estimate of the damage [suffered by Iodice and Thornwood] based on relevant data," *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264–65, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946), including the testimony of Iodice and of customers, and evidence of profits realized by Pleasant Excavators after the unfair labor practices had ceased. 512 F.2d at 389.

Plaintiffs Anthony Iodice and Thornwood Excavators and Movers, Inc. had been engaged in trucking operations in Westchester County, New York. They claimed damages under section 303 of the Labor Management Relations Act, 29 U.S.C. § 187 (1970). This court found that unfair labor practices had been committed against Iodice and Thornwood entitling them to seek damages under 29 U.S.C. § 187(b) to compensate for business lost due to defendants' acts.

At trial both Iodice and Thornwood sought to establish that the defendant union's unlawful conduct diminished their profits. They sought to demonstrate the extent of this damage by comparing the profits of their business operations during the period 1963 to 1969 with the profits earned in 1969 by Pleasant Excavating and Equipment Rental Co., Inc. Iodice was employed by Pleasant at the time of trial. Pleasant had operated relatively free of union activities.

To establish their respective profits during the relevant period, plaintiffs did not offer their books and records. There was testimony at trial that during the weekend after trial commenced, the office where the records were kept was burglarized and that all of the books and records were stolen. Supportive documentation, it was claimed, could not be produced. Proof of plaintiffs' gross income, costs and profits was primarily based on Iodice's testimony although a collection of invoices were introduced allegedly representing some business done by Thornwood.

Iodice presented only imprecise figures based solely on his own admittedly indefinite recollection. In fact, Iodice intentionally did not look at the companies' records when preparing his testimony, although he had access to them. Rather, he testified, "I wanted to see how good I was," (Tr. 584) although he also testified that the books and records "are better than my recollection." Tr. 585. Later, in response to the court's question about Iodice's failure to review the records Iodice responded:

> I didn't think it was really important. I thought the attorney would have the books and he would produce whatever was needed. I more or less just estimated what I thought would be correct.
>
> THE COURT: Don't you think that if you were so concerned about being correct that you would have wanted to look at the books?
>
> THE WITNESS: I thought it would be more important for the attorney to take care of all that than me. Tr. 635–636

During 1963 and 1964 Iodice was in business for himself. He testified that he did $30,000 worth of business in each of those years. Tr. 523. In 1965, he began working for Thornwood, but he "was billing customers under Anthony Iodice." Tr. 524. He "transferred the company to [his] sister and people kept—

knew they were doing business with Anthony Iodice all these other years and every time we sent a bill they wanted them under Anthony Iodice because they wanted to continue doing business with Anthony Iodice, 'so we would bill them under Anthony Iodice, but the money was turned over to Thornwood Excavators. . . . There were some people that paid checks on Thornwood Excavators also." Tr. 525. Money he received as an individual he put in the account of Thornwood. Tr. 644. So that for 1965, 1966, 1967 and 1968 all receipts he received by customer billings were actually Thornwood income. Tr. 646–647. During 1965 and presumedly in the subsequent years he was receiving a salary from Thornwood. Tr. 644. Nevertheless, Iodice's testimony regarding 1965 through 1968 was first in terms of billings by Iodice and then by Thornwood billings. For the relevant years, he testified that he and Thornwood had the following gross income:

| Year | Iodice | Thornwood |
|------|--------|-----------|
| 1965 | $ 22,000 | $ 10,000 |
| 1966 | $ 10,000–12,000 | $ 10,000 |
| 1967 | $ 22,000 | $ 10,000–11,000 |
| 1968 | $ 2,000–3,000 | $ 8,000 |

Tr. 526–527, 529, 531–532

Iodice testified that his cost of doing business in 1963 and in 1964 was $15,000 each year. Tr. 536. As to 1965 through 1968, Iodice testified that he was familiar with the cost of doing business individually for those years but that it would be hard to state that cost because "I combined everything as one operation, not as two different operations . . . . I did business as Anthony Iodice but I used a Thornwood trailer when it was being done, so it is really hard to break it down, but I can give it approximately, I guess. In '65, approximately $10,000 worth of costs. It's going to be hard to add in the overhead because there was the two of us together." Tr. 538–539.

He then testified that costs of business done as Anthony Iodice, 1965 through 1968, was $10,000 for each year. Tr. 539–540. In computing these costs he included "fuel, repairs, salary and miscellaneous." Tr. 539.

As to Thornwood, Iodice testified that costs were $15,000 for 1965, 1966, and 1967 respectively and $5,000 for 1968. Tr. 538, 540. It is unclear if these estimates also exclude overhead costs.

Since Iodice has testified that he worked for Thornwood during the period 1965 through 1968, it is desirable to consolidate the figures representing billings by Iodice and billings by Thornwood. The combined gross business, costs, and profit and loss figures would then break down as follows:

| YEAR | GROSS | COSTS | PROFIT/LOSS |
|------|-------|-------|-------------|
| 1965 | $32,000 | $25,000 | $7,000 |
| 1966 | $19,000 | $25,000 | ($6,000) |
| 1967 | $32,500 | $25,000 | $7,500 |
| 1968 | $10,500 | $15,000 | ($4,500) |

Plaintiffs then introduced evidence showing the business done in 1969 by Pleasant Excavating and Equipment Rental Co., Inc. which was established late in 1968 or early 1969. Tr. 900. This evidence indicated gross business of $115,088.14, total costs of $69,929.09, and net profit of $45,159.05. With this evidence plaintiffs urged the court to find that the business done by Iodice in 1963 and 1964 and the "combination of business done by Iodice and Thornwood during the years 1965, 1966, 1967 and 1968 should also be measured against the same business done by Pleasant Excavators." Tr. of April 20, 1970 at 62. This court never reached this consideration in its earlier opinion. 345 F.Supp. at 271.

In seeking to measure plaintiffs' lost profits by the profits of Pleasant, plaintiffs have chosen to employ what is generally known as the yardstick test. This method consists of a study of the profits of business operations which are closely comparable to the plaintiff's. Although allowances can be made for differences between the firms, the business used as a standard must be as nearly identical to the plaintiff's as possible. *Lehrman v. Gulf Oil Corp.,* 500 F.2d 659,

*rehearing denied,* 503 F.2d 1403 (5th Cir. 1974), *cert. denied,* 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975).

■■ Iodice testified that the owner of Thornwood and Pleasant is the same person, that there is no difference in the type of business done by Thornwood and that done by Pleasant, and that there was no difference in the work Iodice did for Thornwood and that he did for Pleasant. Tr. 930. Pleasant does business in the same area as Thornwood did business. Despite these similarities, the record is barren of further similarities. No testimony demonstrated that the size of Pleasant's operation or its equipment inventory compares with Iodice's individual operations or with Thornwood's. Pleasant's total operation costs in 1969, $69,929.09, far exceed Iodice's costs in 1963 and in 1964 or Thornwood's costs. This in itself suggests that Pleasant's operations are larger than were plaintiffs'. Plaintiff introduced no evidence that Iodice or Thornwood were equipped to do a volume of business equal to Pleasant's. No evidence suggests that Pleasant operates under similar market conditions as plaintiffs operated under from 1963 through 1968. Pleasant did not begin operating until 1969 after Thornwood was defunct. If the yardstick measure is of any value at all, it should be a comparison of operations during the same time period or at least of operations existing under similar market conditions. Further, no testimony was offered to show how much business comparable operations did during the relevant period. The similarities that were testified to—identity of owner and similarity of services rendered and area of operation—are not enough to rely on Pleasant as a yardstick with which to compute damages. In short, there is no adequate basis upon which a reasonable estimate or inference will lie. Plaintiffs' attempt to prove damages by a yardstick measure must therefore fail.

In reaching this conclusion the court is aware that the court of appeals had indicated that this court include evidence of profits realized by Pleasant after the unfair labor practices had ceased within the relevant data which this court should consider when recomputing a just and reasonable estimate of plaintiffs' damages. Although this court had not reached this consideration in its earlier review of damages, its consideration of this evidence now constrains the court from using it as data upon which to base a damages award.

However, the court has recomputed damages for lost profits on another basis. In so doing, the court is mindful that damages can not be determined by mere speculation and guess but the court may make a just and reasonable inference of approximated damages. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

■ The testimony of both Iodice and Thornwood's customers reveals that Thornwood lost business during the period of defendants' wrongful conduct. Testimony of Thornwood's customers suggests that as early as 1966 customers stopped doing business with Thornwood because of defendants' acts. Tr. 51–52, 64, 66, 68–69, 86–87, 102, 166, 184. No testimony showed customer losses to Iodice in 1963 or in 1964. Iodice's testimony indicates a decline in Thornwood's business beginning in 1966. See consolidated chart, *supra.* During the period 1963 through 1965 income of Iodice individually and of Thornwood is shown to be stable: Iodice earned income of $30,000 for each of 1963 and 1964, and Thornwood earned income of $32,000 for 1965. Although the court has no reasonable or nonspeculative external measure for establishing damages during the relevant period, the court is satisfied that an equitable award can be made by comparing profitability during the period of stability, 1963 through 1965, with profitability during the period of ascertainable loss, 1966 through 1968. The most just and least speculative award may be fashioned by this method.

Iodice testified that when he priced a move he would add on a 25–30 per cent profit or an average profit of 27½ per cent. Tr. 541–542. On a $30,000 gross,

this would be a profit of $8,250. By comparing this base profit figure with the profits earned in 1965, 1966, 1967 and 1968, the court determined an award of $1,250 for 1965, $8,250 for 1966, $750 for 1967, and $8,250 for 1968 or a total of $18,500 damages award to Thornwood.

■ As to Iodice, the record reveals no relevant data which would enable the court to make a just and reasonable estimate of damages without the court engaging in speculation and guess; precedential case law constrains the court from engaging in such speculation. Accordingly, the court must resubmit its award of $100.00 nominal damages to Iodice for wrongful acts committed against him during 1963 and 1964.

So ordered.