**HOMEFINDERS OF AMERICA, INC.,
Plaintiff, Appellant,**

v.

**PROVIDENCE JOURNAL COMPANY et al., Defendants, Appellees.**

No. 79–1396.

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1980.

Decided March 26, 1980.

Ralph J. Gonnella, Providence, R. I., for plaintiff, appellant.

Joseph V. Cavanagh, Jr., with whom Knight Edwards, John D. Deacon, Jr. and Edwards & Angell, Providence, R. I., were on brief, for defendants, appellees.

Before ALDRICH and BOWNES, Circuit Judges, KEETON, District Judge.[*]

ALDRICH, Senior Circuit Judge.

This is an action under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, brought initially by one Walker, a franchisee of Homefinders of America, Inc., against Providence Journal Co., publisher of a daily metropolitan newspaper. Homefinders later was joined as plaintiff, see *Walker v. Providence Journal Co.*, 1 Cir., 1974, 493 F.2d 82, and is now the sole plaintiff remaining. Plaintiff alleges that on and after February 1, 1973, defendant unlawfully refused to run classified advertisements desired by Walker, causing him financial loss and ultimately to go out of business and preventing plaintiff from re-establishing a Rhode Island franchise. The case was tried to the court. After extensive findings the court dismissed the action. *Homefinders of America, Inc. v. Providence Journal Co.*, D.R.I., 1979, 471 F.Supp. 416. We affirm.

Walker's business consisted of selling to individual customers, for an advance fee, listings of properties available for rent in his area, and in any requested areas where plaintiff had other franchises. Plaintiff agreed to furnish such listings and to provide Walker with assistance, information, and advice in return for a percentage of his gross receipts. Walker's own lists were comprised of properties listed with him by prospective landlords, plus others of which more will be said later. No fee was charged to the landlords. Walker did not participate in any rental negotiations, nor did he receive any commissions; his sole activity was the sale and maintenance of lists. His advertisements, however, were ostensibly of individual but insufficiently

* Sitting by designation.

identified properties, seemingly no different from the usual classified advertisement relating only to the property mentioned. A reader responding to Walker's advertisement was apt to learn, however, that the property was not available, and, in any event, that he would have to pay a fee for further information. The court found,

"In mildest terms, the nature of Plaintiff's advertising is misleading. It sought to notify the public, not of the qualities and virtues of its service, but of the alleged availability of particular properties. At first blush, this seems to be inconsistent with Plaintiff's own interest, since the commodity which it had for sale was information concerning the availability of certain properties which would be disclosed only upon the payment to Plaintiff of its fee. In fact, the purpose of this advertising eminently served Plaintiff's purpose. It inserted advertisements which were calculated to attract an unusual degree of attention, indicating that properties were available for rent under circumstances that were, to say the least, unusual. For example, its advertisements stated that children and pets were welcome, utilities were paid and automobile parking was available. Complaints concerning this type of advertising establish without doubt that it is what has been called 'bait' advertising. When the prospective tenant called the listed telephone number, it turned out to be Plaintiff's telephone and the exuberant prospective tenant was told that the property advertised was no longer available but if the prospective tenant would merely come to Homefinder's Office and pay the fee of $20, other listings would be made available. In some instances, it is admitted, properties were advertised by Plaintiff without the knowledge or consent of the owner, and in terms quite different from those which the owner had in mind.

"Plaintiff in oral argument contends that the purpose of this type of advertising was to notify the public that it had listings of properties in particular areas. This explanation cannot be accepted." 471 F.Supp., ante, at 420.

In its brief, plaintiff makes two responses.

"The District Court's reference to 'bait' advertising suggests an illegal practice when in fact it is a common advertising technique, particularly for employment agencies. The District Court makes it appear *all* of Walker's advertising were fictitious when there is no such evidence in the record."

What percentage was fictitious is irrelevant. The testimony of the manager of defendant's classified advertising department was that the continual complaints, including some from the Better Business Bureau, were so numerous that they had to be specially channeled to him.

The general truth of defendant's objections plaintiff concedes.

"Plaintiff . . . on this appeal will not attempt to refute or even defend allegations that it has engaged in deceptive or misleading practices. Plaintiffs will even concede, for purposes of this appeal, that the conduct of plaintiff's former franchise may have been one motivating factor in the adoption of defendant's rental referral policy."

Plaintiff apparently felt comfortable in this concession because of the general principle that an antitrust violator cannot set himself up as a regulator and justify his own conduct by asserting improper behavior by the injured party. *See, e. g., Perma Life Mufflers, Inc. v. International Parts Corp.,* 1968, 392 U.S. 134, 138–40, 88 S.Ct. 1981, 20 L.Ed.2d 982; *Fashion Originators' Guild of America, Inc. v. Federal Trade Comm'n,* 1941, 312 U.S. 457, 467–68, 61 S.Ct. 703, 85 L.Ed. 949. We do not question this principle, but plaintiff over-applies it. Defendant is not permitted to act as a protector of the public, but it may protect its own property from direct injury. In this sense plaintiff's concession is suicidal.**

** Plaintiff attempts to back away from this concession in its reply brief. Not only was the concession well founded, however, but after one trip to this court, *see Walker,* ante, and an extensive opinion by the district court, we are not impressed by such a change of posture, either as a tactic or in fact.

■ To disregard the many trees in the briefs of both parties and look at the forest, plaintiff is demanding that a newspaper, whose First Amendment rights in this area are not to be ignored, *see* post, publish advertisements whose misleading nature has drawn the justified criticism of its readers.· The court found that the establishment of defendant's policy was motivated by customer complaints. The depth of that motivation establishes its relevancy. Although the district court findings erroneously dwelt in part on the propriety of defendant's conduct in protecting the public, the court also found that defendant's reasons for refusing the advertisements were to avoid being charged with participation in deceptive acts or practices, and "to maintain a quality advertising section for its readers." *Homefinders*, ante, 471 F.Supp. at 423. We could not label such findings plainly wrong; indeed, they seem plainly right.

The fact that defendant may have a monopolistic position does not mean that competitors, assuming plaintiff to be such, can require it to immolate itself. Monopoly or no, the Sherman Act is not aimed at reasonable conduct, and it is not unreasonable for a newspaper to refuse misleading advertising that offends its readers and could turn them away from its classified columns altogether. The quality of Walker's advertisements was even more directly damaging to defendant's reputation than is likely in the customary dilution case. *E. g., Tiffany & Co. v. Boston Club, Inc.*, D.Mass., 1964, 231 F.Supp. 836, 843–44; *Bulova Watch Co. v. Stolzberg*, D.Mass., 1947, 69 F.Supp. 543. Defendant was free to refuse to deal with a party who so lowered the standards of its advertising. *See Byars v. Bluff City News Co.*, 6 Cir., 1979, 609 F.2d 843, 862–63; *Gamco, Inc. v. Providence Fruit & Produce Bldg., Inc.*, 1 Cir., 1952, 194 F.2d 484, 487–88, *cert. denied*, 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 636 ("possibly low business or ethical standards"); *America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc.*, N.D.Ind., 1972, 347 F.Supp. 328, 333–34. Plaintiff fails to distinguish between illegally attempting to maintain a monopoly position and protecting one's assets. *Otter Tail Power Co. v. United States*, 1973, 410 U.S. 366, 380–82, 93 S.Ct. 1022, 1030, 35 L.Ed.2d 359, *Byars*, ante, 609 F.2d at 863 & n.55; *International Railways of Central America v. United Brands Co.*, 2 Cir., 1976, 532 F.2d 231, 239–40. The point at which per se conspiracy principles might overtake concerted prophylaxis is not before us; there is no merit in plaintiff's criticism of the court's finding that defendant's actions were unilateral.

In this circumstance plaintiff claims that defendant's policy would result in the rejection of advertising by anyone who required the prospective tenant to pay a fee in order to obtain rental information, even if that fact were disclosed. If that is so, it is irrelevant. While ultimately Walker may have been willing to state that the tenant would have to pay a fee, he did not correct the other misleading aspects which engendered readers' complaints. Prior to defendant's ultimate decision of February 1973, defendant had already once suspended the publication of Walker's advertisements because of readers' complaints. When defendant permitted resumption, Walker continued as before. Plaintiff's present claim is that defendant should have policed Walker's advertisements, "edit[ed] advertising copy and/or place[d] advertisements in the newspaper in such a way as to insure truthful disclosures." Even apart from the manifest expense to defendant of such a procedure, this suggestion is little short of absurd—the advertiser should do his own policing. Plaintiff's contention, moreover, is peculiarly inappropriate with regard to its own situation. In *In the Matter of Rentex, Inc. T/A Homefinders of America*, 87 F.T.C. 1340 (1976), the Federal Trade Commission, impressed by the misleading character of plaintiff's advertising elsewhere, filed a complaint charging practices asserted in the present case. Following a consent order that there should be no such conduct

in the future, other than what might occur accidentally and non-negligently—as to which plaintiff was required to police itself constantly—plaintiff elected to abandon the referral business altogether. Plaintiff was not interested in a cleaned-up act. Counsel's contentions bear little relation to the facts.

Nor are we moved by plaintiff's attempt to piggy-back on the rights of other parties—none of whom complained—allegedly faced with a policy not to publish even those advertisements which involved no misleading. Plaintiff argues that as the "victim of the anti-competitive policy imposed by the defendant Journal he (sic) can sue those who have combined to effectuate the restraint not only to vindicate his (sic) own interest but as a surrogate attorney to vindicate the public wrong." Plaintiff was not victimized by a restrictive advertising policy. It cannot proceed entirely vicariously, see Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 1977, 429 U.S. 477, 96 S.Ct. 1101, 47 L.Ed.2d 311; GAF Corp. v. Circle Floor Co., 2 Cir., 1972, 463 F.2d 752, cert. denied, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045, particularly when no supposed beneficiary of its endeavors is present in the case. We add that plaintiff's continued pressing for an injunction in spite of the well supported finding that it has no bona fide intent to resume doing business in Rhode Island requires no comment.

In conclusion, we observe that for anyone who charges for rental information but advertises without disclosing the hook, it is not only easy, but highly tempting to use artificial bait. Such bait can be made more attractive; furthermore, the fish cannot steal it. Even when it might lack proof of actual fraud, we would hesitate long before holding that a newspaper, monopoly or not, armed with both the First Amendment and a reasonable business justification, can be ordered to publish advertising against its will. See Associates & Aldrich Co. v. Times Mirror Co., 9 Cir., 1971, 440 F.2d 133, 135–36; J. J. Gordon, Inc. v. Worcester Telegram Publishing Co., 1961, 343 Mass. 142, 177 N.E.2d 586; cf. Miami Herald Publish-

ing Co. v. Tornillo, 1974, 418 U.S. 241, 258, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730. In the present case we see no question. "The antitrust laws are not a shield for deceptive advertising." Staff Research Assocs., Inc. v. Tribune Co., 7 Cir., 1965, 346 F.2d 372, 374.

*Affirmed.*