HOME PLACEMENT SERVICE, INC. and Joseph P. Muschiano

v.

PROVIDENCE JOURNAL COMPANY.

Civ. A. No. 77-158 S.

United States District Court, D. Rhode Island.

Oct. 27, 1983.

Gonnella & Gonnella by Ralph J. Gonnella, Providence, R.I., for plaintiffs.

Edwards & Angell by Edward F. Hindle, Knight Edwards, Joseph V. Cavanagh, Jr., Providence, R.I., for defendant.

## OPINION

SELYA, District Judge.

### I.

This civil action was brought by Home Placement Service, Inc. ("HPS") and its founder/president, Joseph P. Muschiano ("Muschiano"), charging that it had been scuttled in violation of 15 U.S.C. §§ 1 and 2 (the Sherman Act). The defendant is the Providence Journal Company ("PJB"), a publisher which towers over the Rhode Island market. PJB publishes, *inter alia*, a morning daily newspaper ("The Providence Journal"), an afternoon daily newspaper ("The Evening Bulletin"), and a Sunday newspaper ("The Providence Sunday Journal"). Each of these publications has a statewide audience (extending, indeed, into southeastern Massachusetts) and each is far and away the most widely circulated gazette of its genre within the market area.

The instant action was the second to have been instituted in this court challenging PJB's stern refusal to accept rental referral advertising in its classified columns. The predecessor action, to which the present plaintiffs were not parties, generated two trips to the Court of Appeals for the First Circuit. *See Walker v. Providence Journal Co.*, 493 F.2d 82 (1st Cir. 1974), and *Homefinders of America, Inc. v. Providence Journal Co.*, 471 F.Supp. 416 (D.R.I.1979), *aff'd*, 621 F.2d 441 (1st Cir.1980) (*"Homefinders I"*). The initial squall of litigation made clear, *inter alia*, that the defendant has monopolistic control over newspaper publication in the relevant market, *e.g., Homefinders I*, 621 F.2d at 443; but that "a newspaper, monopoly or not, armed with both the First Amendment and a reasonable business justification," could not be required to publish admittedly deceptive advertising. *Id.* at 444.

The case at bar, too, has sailed beyond the shallows of the district court. PJB has for many years (the memory of living man runneth not to the contrary) engaged in the business of providing information about rental real estate. PJB's *modus operandi* in this regard was standard fare for the medium: it would purvey advertising space (classified or display) to landlords desiring to attract tenants. HPS was a competitor, to the extent that the tenor of its business was to accumulate data anent residential vacancies from myriad sources (including the columns of the PJB), and in the wake of such efforts, to compile, edit, and sell the resultant lists. Such an endeavor is known in the trade as "rental referral."

Shortly after HPS was christened, the plaintiffs tacked across the defendant's bow: HPS sought to launch its business by the placement of classified advertisements in PJB's newspapers. These proposed commercial messages were patterned after, and similar to, those employed by a preexisting rental referral operator ("HOA–RI").[1] The plaintiffs, however, ran afoul of heavy weather. PJB, based on a plethora of complaints about the integrity of HOA–RI's advertising (or better put, the lack thereof), instituted a blanket ban on advertisements from rental referral firms. In the course of this embargo, PJB applied the prohibition to reject HPS's proffer. Stranded in this manner, HPS soon thereafter sank to the bottom. Its counter-attack on PJB's proscription was swift and stormy; HPS filed suit, branding the newspaper's black-out as violative of the antitrust laws.

Following a bench trial, this court (Boyle, Chief Judge) entered judgment in favor of the defendant. The Court of Appeals poured oil on these troubled waters and reversed, finding a Sherman Act transgression. *Home Placement Service, Inc. v. Providence Journal Co.*, 682 F.2d 274 (1st Cir.1982) (*"HPS I"*). Certiorari was denied by the United States Supreme Court. ——

---

**1.** Homefinders of America, Inc. ("HOA"), based in Denver, Colorado, is a national franchisor of rental referral firms. At the times material hereto, an HOA franchise ("HOA–RI") had been operating in Providence, Rhode Island.

U.S. ——, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). Unlike *Homefinders I*, where the plaintiff had conceded that its advertising had indeed been "deceptive" and "misleading," 621 F.2d at 442, *HPS I* involved a situation where the plaintiffs had only recently pushed off from shore, and "defendant failed to show ... that the [representation as to] specific advertised property was false or exaggerated, or that plaintiff[s] engaged in unauthorized listing." *HPS I*, 682 F.2d at 277. The action was accordingly remanded to this court for further proceedings consistent with the appellate mandate. *Id.* at 281. The language of the First Circuit opinion should be noted:

> Plaintiff sought relief in the form of treble damages, attorney's fees, and an injunction. Further proceedings will be necessary to determine the appropriate form of injunctive relief, if any is needed, and the amount owing in damages and attorney's fees.

*HPS I*, 682 F.2d at 281 (footnote omitted). In a footnote to the passage quoted above the circuit court took pains to observe that "[w]e offer no opinion on whether plaintiff's claim for damages might have been waived." *Id.* at n. 8. Pursuant to a further suggestion contained in Judge Aldrich's opinion, *id.* at 281, the case, on remand, was transferred to "another trier."

The defendant, seizing upon footnote 8 of *HPS I*, sought to cast the plaintiffs adrift and promptly moved for judgment as to the damage claim. This court, in an *ora sponte* bench decision (May 9, 1983), held that, under the circuit court mandate, "there shall be no new trial on the issue of damages and ... the court will pass upon the damage issue on the record as constituted during the original trial." Transcript of May 11, 1983 hearing at 7. The plaintiffs then moved in the Court of Appeals for clarification of the appellate mandate, and this court stayed proceedings pending a resolution of that petition. On June 16, 1983, the First Circuit issued its per curiam memorandum and order, thereby further illuminating the directives of *HPS I*.[2] At an ensuing chambers conference (June 24,

1983), this court dissolved its stay, permitted discovery to go forward limited to matters pertinent to the need for injunctive relief, and required the plaintiffs to specify, by offer of proof, any new evidence which they desired to introduce vis-a-vis damages, pursuant to paragraph 3 of the June 16 clarification order.

The plaintiffs' offer of proof, when filed, comprised exclusively "incremental evidence solely related to the computation of damages for the period 1981, 1982, 1983." Transcript of July 20, 1983 hearing at 2. Plaintiffs' counsel stipulated that the said offer of proof went only to the calculation of later-year damages (if any) and was irrelevant to the "threshold" damage issue, viz., whether the evidence of record at the original trial was sufficient *vel non* to support *any* award of damages. *Id.* at 2–3. A briefing schedule was implemented, and the court is now confronted with two issues for decision:

1. Should an injunction issue?

2. Is there a sufficient factual predicate in the record upon which any damage award to the plaintiffs may validly be premised?

## II.

The plaintiffs seek to enjoin PJB from continuing to violate the antitrust laws. PJB contends, however, that because it has charted a new course and has changed the policy which the First Circuit found to be in derogation of the antitrust laws, there is no current need for the issuance of a restraining order. The availability of injunctive relief against violators of the antitrust laws is circumscribed by § 16 of the Clayton Act, 15 U.S.C. § 26, which provides in pertinent part:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of

2. The memorandum and order, in its entirety, is annexed hereto as Appendix "A".

this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity. . . .

The plaintiffs, pursuant to the Clayton Act, claim that they are entitled to equitable relief because PJB's approach has historically been hostile to rental referral advertisers; and further, that even the defendant's present policy shows signs of lingering antipathy.[3] PJB's rejoinder is twin-masted. First, the defendant argues that it has, pursuant to *HPS I*, mended its ways and now accepts rental referral advertising. Thus, PJB reasons, it has reached safe harbor; there is no need for the court to order the defendant to do something that it is already doing voluntarily.

■ It is, of course, apodictic that "[c]ourts, after all, do not enjoin parties from violating the law without proof of a real likelihood that such will happen." *Derwin v. General Dynamics Corp.*, 719 F.2d 484 at 491–92 (1st Cir.1983). Yet, in the case at bar, the voyage upon which PJB originally embarked has been judicially condemned, *see HPS I*; and, in such circumstances,

> "[w]hen defendants are shown to have settled into a continuing practice or entered into a conspiracy violative of anti-trust laws, courts will not assume that it has been abandoned without clear proof. *Local 167 v. United States*, 291 U.S. 293, 298 [54 S.Ct. 396, 398, 78 L.Ed. 804]. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption. Cf. *United States v. United States Steel Corp.*, 251 U.S. 417, 445 [40 S.Ct. 293, 297, 64 L.Ed. 343].

*United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 695–696, 96 L.Ed. 978 (1952).

Subsequent to its opinion in *Oregon State Medical Society*, the Supreme Court has, on frequent occasions, reiterated that the voluntary cessation of illegal conduct does not moot an action for injunction "if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to "[their] old ways." ' " *Allee v. Medrano*, 416 U.S. 802, 810–11, 94 S.Ct. 2191, 2198, 40 L.Ed.2d 566 (1974) (quoting *Gray v. Sanders*, 372 U.S. 368, 376, 83 S.Ct. 801, 806, 9 L.Ed.2d 821 (1963)); *accord Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). The controlling standard has been precisely articulated by Justice Brennan:

> The courts have an obligation, once a violation of the antitrust laws has been established, to protect the public from a continuation of the harmful and unlawful activities. A trial court's wide discretion in fashioning remedies is not to be exercised to deny relief altogether by lightly inferring an abandonment of the unlawful activities from a cessation which seems timed to anticipate suit.

*United States v. Parke, Davis & Co.*, 362 U.S. 29, 48, 80 S.Ct. 503, 514, 4 L.Ed.2d 505 (1960) (citation omitted).

The "wide discretion" alluded to by Justice Brennan in *Parke, Davis* is to be exercised not in a vacuum, but only after a realistic appraisal of the facts of a particular case against the framework constructed by the Court in *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897–898, 97 L.Ed. 1303 (1953):

> [T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct. *Hecht Co. v. Bowles, supra* [321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754]; *Goshen Mfg. Co. v. Myers Mfg. Co.*, 242 U.S. 202 [37 S.Ct. 105, 61 L.Ed. 248] (1916). The purpose of an injunction is to prevent future violations, *Swift & Co. v. United States*, 276 U.S. 311, 326 [48

**3.** Following the dissolution of this court's stay, *see* text *ante*, the plaintiffs deposed various members of the PJB hierarchy in an effort to buttress the claim of enduring journalistic animus toward rental referral agencies. These depositions can best be characterized as inconclusive. The evidence so adduced does, however, disclose that, even under its current procedures, PJB classifies such advertising separate and apart from—and differently than—run-of-the-mine for-rent entreaties.

S.Ct. 311, 72 L.Ed. 587] (1928), and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

In the instant case, the court unhesitatingly accepts "the bona fides of the expressed intent to comply." *Id.* PJB is a reputable concern which, promptly upon rendition of an adverse judicial decree, abandoned the interdicted practice. And, despite the ultimate finding of liability, it cannot be said that the conduct in question was recklessly or wantonly undertaken: the state of the applicable law was admittedly unsettled, *Homefinders I* doubtless seemed to bulwark PJB's policy, and the record is devoid of any evidence of impure motives.[4] Yet, the character of the past violations is such as to pose a genuine threat to the public weal, especially given the societal importance of organs of the press and the defendant's preeminence in the relevant marketplace.

■ To some extent, these factors balance out. Thus, the efficacy of the discontinuance must be the determinative element as to which way the winds of equity are blowing. When all is said and done, "[t]he sole function of an action for injunction is to forestall future violations," *United States v. Oregon State Medical Society,* 343 U.S. at 333, 72 S.Ct. at 695, not to exact retribution for past wrongs. And it is precisely on this reef that the defendant's ship founders.

■ PJB's post-*Homefinders I* policy is spelled out in the recent spate of discovery. In substance, the defendant has established a separate classified column for rental referral firms. It heads that column with specific notice of a fee requirement. The parties have briefed at length countervailing arguments as to whether or not this fresh approach passes antitrust muster. Therein lies the rub: absent the anodyne of a carefully-drawn injunction, it is impossible to discern exactly what obligation the law places on the newspaper or exactly what rights rental referral firms enjoy under the dispensations of *HPS I.* In this case, the threat of future violations is substantial, for it is plausible to the court that the defendant, no matter how noble its motivation or how honorable its intent, may accidentally or mistakenly sail too close to the wind[5] in the absence of the clear-cut bearings which an injunction could and should furnish.

The plaintiffs have, for the reasons indicated, satisfied the court that there is a reasonable likelihood of future violations sufficient to warrant the granting of injunctive relief. *See United States v. W.T. Grant Co.,* 345 U.S. at 633–34, 73 S.Ct. at 897–898; *United States v. Oregon State Medical Society,* 343 U.S. at 333–34, 72 S.Ct. at 695–696.

■ This finding is not, however, entirely dispositive of the question of the propriety of injunctive redress, for, as an anchor to windward, PJB also questions the plaintiffs' standing to invoke such a palliative. As to the corporate plaintiff, PJB correctly notes that it is not in good standing, its corporate charter having been revoked by the Rhode Island Secretary of State on

---

4. The Court of Appeals took pains to note that any alleged "bad purpose" on the part of the defendant played no role in its holding, *HPS I,* 682 F.2d at 281, in effect rejecting for purposes of this sort of antitrust claim the maxim "actio non facit reum, nisi mens sit rea." Lofft's Reports, Court of King's Bench, Maxim 37 (1776).

5. And, as noted in *HPS I,* the defendant's good faith is not sufficient to immunize it against antitrust violations of this nature. 682 F.2d at 281.

October 10, 1979. When such revocation occurs, the corporation is no longer authorized to conduct business in Rhode Island. R.I.Gen.Laws § 7–1.1–88. Such a corporation is nevertheless empowered to transact certain business for two years post-revocation in order to wind up its affairs. *Id.* at § 7–1.1–98.1. The defendant contends that since HPS's authority to ply its trade lapsed in 1981 (at the latest), the corporation does not exist and is a ghost ship for purposes of the present proceedings. In tandem with this thrust, PJB asseverates that the individual plaintiff is likewise lost in the Bermuda Triangle of legal technicalities. In advancing this argument, the defendant points out that Muschiano is not a licensed real estate broker in Rhode Island; and that, under a recently-enacted law, any person operating a rental referral firm in this state must be so licensed. *Id.* at § 42–14.4–2. From these facts, the defendant rather ingenuously concludes that Muschiano cannot now enforce a remedy against it because he lacks the qualifications, presently, to resume the business.

As to Muschiano, PJB's stand is not only an exercise in casuistry, but also overlooks settled caselaw. The defendant need search no further than its own involvement with rental referral agencies to ascertain that:

> Even though he is not currently conducting business in the market allegedly encumbered with the illegal conduct, an aggrieved party may retain a sufficient interest to seek and obtain injunctive relief against a violation of the antitrust laws.

*Walker v. Providence Journal Co.,* 493 F.2d at 85. *Accord Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969).

Here, Muschiano's interest in the litigation is not becalmed to the extent that his plaints should be disregarded. His current inactivity is, after all, at least arguably the result of a wrong perpetrated upon him by the defendant—the very wrong which he now seeks to ameliorate. And, although his business is not velivolant at present, there is nothing to suggest that he may not, at some future time, renew his brokerage license and reactivate his rental referral enterprise. In point of fact, the possibility that PJB might revert to its bygone ways, or adopt amended (but equally unlawful) patterns, would be a strong disincentive to Muschiano's resumption of business. Viewed in this light, he has a valid stake in the proceedings.[6]

It follows inexorably that, notwithstanding both the defendant's sincere protestations of repentance and reform and the transmogrification of its rental referral advertising policy, the plaintiffs have sustained their burden in respect to the likelihood of recurrent violations and in regard to standing. Permanent injunctive relief should be granted.[7]

### III.

The court next tacks to the plaintiffs' claims for money damages. In so doing, the court notes that the defendant has not, as to this element of the case, pressed its contention that the termination of the corporate existence of HPS, *see* text *ante,* affects any right of monetary recovery. Thus, the court treats any such argument as having been waived. *Cf. United States v. Kobrosky,* 711 F.2d 449, 454 (1st Cir. 1983).

The focal point of this inquiry is the very issue limned in *HPS I,* 682 F.2d at 281 n. 8. In turn, the threshold question is whether or not the evidence of record has sufficient probative force to entitle the plaintiffs to an award of money damages. In evaluating the proof, this court must, on this point, take the trial record as it stands, inasmuch

---

**6.** Since Muschiano has the requisite abiding interest in the litigation, the court need not decide whether HPS (Flying Dutchman or not) also has standing to weigh anchor in search of injunctive relief.

**7.** Such an injunction must be drawn precisely and in close adherence to the tenets of Fed.R. Civ.P. 65(d). The parties shall each submit to the court a proposed form of injunction within one week from the date hereof.

as plaintiffs offered no incremental evidence touching upon the issue.

■ Under section 4 of the Clayton Act, 15 U.S.C. § 15(a), a person "who shall be injured in his business or property" as a result of an antitrust violation may bring suit in the district court and "shall recover threefold the damages by him sustained." The party seeking relief must show a causal connection between the defendant's conduct and some actual injury to the plaintiff. *Ford Motor Co. v. Webster's Auto Sales, Inc.*, 361 F.2d 874, 883 (1st Cir.1966). The plaintiff must also establish the amount of the damages. *Id.* at 885; *Grappone, Inc. v. Subaru of New England, Inc.*, 534 F.Supp. 1282, 1298 (D.N.H.1982).

This court must, of course, be satisfied that the plaintiffs have been injured as a result of PJB's transgression of the antitrust laws. The First Circuit has, however, left little doubt that the defendant's actions in shunning advertisements from rental referral firms contributed to the demise of HPS. *See HPS I*, 682 F.2d at 278–79. Given the language of Judge Aldrich's opinion, it must be taken as *stare decisis* for purposes of this case that the requisite causal connection existed between PJB's violation of the antitrust laws and the harm suffered by the plaintiffs.

Nonetheless, it remains the plaintiffs' burden to present evidence from which the trier of facts can find the quantum of damages so sustained. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946); *Ford Motor Co. v. Webster's Auto Sales, Inc.*, 361 F.2d at 885–86. In this vein, it has long been recognized that inerrable precision is not required. *E.g., Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–66, 51 S.Ct. 248, 250–251, 75 L.Ed. 544 (1931); *Grappone, Inc. v. Subaru of New England, Inc.*, 534 F.Supp. at 1299. But, while the plaintiffs' burden of proof in such antitrust cases may be relaxed, it neither vanishes entirely nor shifts to the defendant. *Mishawaka v. American Electric Power Co.*, 616 F.2d 976, 987 (7th Cir.1980), *cert. denied*, 449 U.S. 1096, 101 S.Ct. 892, 66 L.Ed.2d 824 (1981); *Siegfried*

*v. Kansas City Star Co.*, 298 F.2d 1, 7–8 (8th Cir.1962), *cert. denied*, 369 U.S. 819, 82 S.Ct. 831, 7 L.Ed.2d 785 (1962). *Accord Story Parchment Co., supra.*

■ To prove damages here, the plaintiffs had to navigate perilous waters: the existence of HPS was short-lived and the business ran aground before any meaningful earnings history could be developed. Such a situation is not unprecedented, however, and it in no wise forecloses the plaintiffs from proving damages. In similar cases, courts have permitted proof of injury by resort to evidence of the track records of comparable firms. *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir.1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975); *Shannon v. Crowley*, 538 F.Supp. 476, 481 (N.D. Cal.1981); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. at 124–25, 89 S.Ct. at 1577–1578; *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. at 264, 66 S.Ct. at 579. Use of such comparative evidence has come to be known familiarly as the "yardstick" approach; a suitor is allowed to demonstrate damages by the introduction of earnings evidence of kindred firms which were not afflicted by any antitrust violations. The rationale for such evidence is the supposition that the plaintiff/victim would have garnered similar profits had it not been buffeted by the defendant's illegal maneuvers. As with virtually all economic proofs, fastidious exactitude is not expected; yet, the yardsticks chosen must replicate, as closely as possible, the business and affairs of the plaintiff. *Lehrman v. Gulf Oil Corp.*, 500 F.2d at 667; *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 392 (9th Cir.1957), *cert. denied*, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957). And, in all events, genuine comparability sufficient to establish a reasonable basis for the computation of the damages with at least a modicum of probative reliability is required. *Lehrman*, 500 F.2d at 667; *Volasco Products Co. v. Lloyd A. Fry Roofing Co.*, 308 F.2d 383, 392–93 (6th Cir.1962), *cert. denied*, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963); *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 518 F.Supp. 102, 118 (E.D.Pa.1981), *modi-*

*fied,* 559 F.Supp. 922 (E.D.Pa.1983); *cf. Farmington Dowel Products Co. v. Forster Manufacturing Co.,* 421 F.2d 61, 82 (1st Cir.1970). Absent such comparability, the proffered yardstick cannot measure straight and true.

It is such a comparative approach which the instant plaintiffs employ in asserting entitlement to money damages. They tendered only a single yardstick: the HOA franchise in Nashville, Tennessee. In *Homefinders I,* HOA–RI had introduced evidence of the putative comparability between the rental markets in Providence, Rhode Island and Nashville, Tennessee; and further, had offered evidence of the profits of HOA's Nashville franchise ("HOA–TN"). *See, e.g., Homefinders I* trial transcript at 896, 964, 1021. During the trial of the instant action, the plaintiffs offered in evidence (without objection by the defendant) portions of the *Homefinders I* trial transcript dealing with these points.[8] Muschiano himself testified briefly. HPS and Muschiano produced no other evidence from which monetary loss could be calculated. Thus, in the last analysis, the adequacy of the plaintiffs' proof of damages in the case at bar must swim or sink, as a gangplank matter, on the validity for this purpose of a comparison between HOA–TN and HPS.

■ The plaintiffs argue, first, that PJB, by neglecting to object to the proffer of the *Homefinders I* evidence, conceded the fact of comparability, and cannot now be heard to object to the match-up of HPS and HOA–TN. But, this is so much useless ballast. The plaintiffs conveniently overlook that the *Homefinders I* transcript itself noted a host of objections on comparability grounds; and the later stipulation does not purport to eradicate those objections. There is nothing in the trial record which, fairly read, intimates that the defendant at any time waived any of its rights as to the sufficiency, weight, or probative force of the plaintiffs' evidence. The cases relied on by HPS and Muschiano in this respect, *e.g., Jay Edwards, Inc. v. New England Toyota Distributor, Inc.,* 708 F.2d 814, 821–22 (1st Cir.1983), are readily distinguishable.[9] Indeed, footnote 8 of the First Circuit's opinion in *HPS I,* 682 F.2d at 281 (quoted in part, *ante* ), makes manifest that the defendant had not ceded the point. The issue of comparability is properly before this court.

■ In terms of the merits of the suggested comparison, the plaintiffs' stance is virtually identical to the old saw apropos of the relevant factors in real estate valuation: location is everything. Shorn of impassioned rhetoric, the nub of the plaintiffs' traverse is that the suburban Kent County area (the primary market served by HPS) is in close proximity to metropolitan Providence (the locus served by HOA–RI); that HPS and HOA–RI therefore serviced one and the same market area; that HPS and HOA–RI must, accordingly, be comparable; and that, since HOA–RI and HOA–TN are connatural operations,[10] HPS and HOA–TN must likewise be comparable.

---

**8.** This court had indicated to the plaintiffs that, to the extent that evidentiary rulings had been made by Chief Judge Boyle during the trial which required reappraisal in light of the Court of Appeals opinion in *HPS I,* the court would grant such reconsideration. *See* Transcript of May 11, 1983 hearing at 9–10. Plaintiffs' counsel was accorded a one-week period within which to direct the court's attention to any such contested rulings. *Id.* No such filing having been made, the court's evaluation must perforce be made on the record as it stood when the trial was completed.

**9.** *Jay Edwards, Inc.* involved a challenge to the sufficiency of comparability evidence which had been submitted to the jury unconditionally and without objection. 708 F.2d 822–23. *Gillentine v. McKeand,* 426 F.2d 717 (1st Cir.1970), also

relied on by the plaintiffs, similarly involved evidence submitted to the jury unconditionally and without objection. And the third case cited by the plaintiffs in support of this argument, *Raxton Corp. v. Arania Associates, Inc.,* 668 F.2d 622 (1st Cir.1982), is also inapposite. *Raxton* concerned a challenge to a finding made by the judge in a prior jury-waived trial which had gone unchallenged in a previous appeal. 668 F.2d at 624. Because the question of damages in the case at bar has not yet been addressed, neither has the question of the sufficiency of the plaintiffs' comparability evidence.

**10.** The plaintiffs conveniently ignore the fact that this intermediate conclusion is far from indisputable. Although it is stated as Holy Writ by HPS and Muschiano, its certitude is about on a par with that of the qabbalah. While HOA–RI

The plaintiffs' theory is an exercise in fideism; it pyramids inference upon inference, reaching toward the stars without proper attention to the fundamental soundness of the cabin sole. Whatever may be shown by the *Homefinders I* record as to the claimed similarities between Providence and Nashville, there is a near-total dearth of proof upon which to premise a meaningful comparison between the West Warwick (Kent County) and Nashville ports of call. The trial record in this case is utterly devoid of satisfactory information anent demographics, economic conditions, idiosyncracies of the market, and the like from which reliable conclusions could be drawn.

Of even greater salience, perhaps, is the fact that HPS was an independent operation; unlike either HOA–RI or HOA–TN, it was not simply a link in the chain of a national franchisor. There is not a scintilla of evidence matching HPS's method of operation with the wonted practices of HOA franchisees. And, although HOA required every franchisee to establish and maintain significant working capital reserves, *Walker*, 493 F.2d at 86, there is no proof that HPS was similarly capitalized or funded. Nor did the plaintiffs adduce evidence to show that administration, training, operating policies, fiscal controls, or staffing levels were congeneric. Lastly, one can linger long with the trial record without obtaining any hint of the relative (actual or projected) performance, profitability, revenues, expenses, customer volumes, debt service, or equipment of HPS as contrasted with either HOA–RI or HOA–TN.

While it is true, as the plaintiffs aver, that the court has considerable leeway to make adjustments in tailoring a damage award in cases of this type, *Knutson v. Daily Review, Inc.*, 468 F.Supp. 226, 229–30 (N.D.Cal.1979), *aff'd*, 664 F.2d 1120 (9th Cir.1981), there must at bottom be a layer of proof which, if not direct and incontrovertible, is at least probable and inferential. "[T]he factfinder is not entitled to base a judgment on speculation or guesswork..." *Zenith Radio Corp.*, 395 U.S. at 124, 89

S.Ct. at 1577. In the case at bar, the gaps in the record yaw ominously. The evidence adduced is, at best, sufficient to establish only the most superficial resemblance; and is hopelessly inadequate to permit any but the most haphazard adjustments in an effort fairly to reflect differences. For aught that appears, HPS and HOA–TN are not only miles apart, but oceans apart. The plaintiffs' yardstick is, in short, a badly gnarled divining rod. It does not point straight and true; and its use is more likely to obfuscate and to confuse than to elucidate and to inform. It is not a yardstick at all within the ambit of the case law; *absque hoc*, the plaintiffs' case on damages simply does not measure up. And, as in *Farmington Dowel Products Co., supra*, this hypoplasia results from a litigant's "own presentation of its case rather than ... the law or the court's application of it here." 421 F.2d at 84.

Because the plaintiffs, by this abject lapse of proof, have left quantification of damages at the mercy of unbridled conjecture, there is a temptation to follow literally the suggestion of Judge Aldrich (*HPS I*, 682 F.2d at 281 n. 8) and hold that the plaintiffs have waived all entitlement to an award. Yet, some harm—albeit immeasurable on this record—did flow from PJB's disregard of its Sherman Act responsibilities, *see* text *ante*, and the weight of authority plainly indicates that, in such circumstances, the course of preference is an award of nominal damages. *See, e.g., Siegfried v. Kansas City Star Co., supra; Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 388 (8th Cir.1974), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974); *Knutson v. Daily Review, Inc.*, 468 F.Supp. at 236; *Newberry v. Washington Post Co.*, 438 F.Supp. 470, 483 (D.D.C.1977). This court will adopt such an approach and will enter a verdict for the plaintiffs in the amount of $3.00 (representing nominal damages of $1.00, trebled as required by 15 U.S.C. § 15(a)).

offered evidence of its comparability to HOA–TN in the *Homefinders I* litigation, neither the

district court nor the circuit court reached that issue.

## IV.

Since the plaintiffs are entitled to an injunction, *see* Part II *ante*, and to nominal damages, *see* Part III *ante*, they are likewise entitled to counsel fees and costs under 15 U.S.C. § 15(a). The plaintiffs shall, within twenty days from the date hereof, submit their fee application in the usual form, complete with a sworn, fully-itemized account of services rendered, time expended, hourly rates, and the like. The defendant shall have ten days thereafter within which to file its opposition thereto (if any there be).

*It is so ordered.*

### APPENDIX "A"

### UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 81–1783

HOME PLACEMENT SERVICE, INC. et al.,

Plaintiffs, Appellants,

v.

THE PROVIDENCE JOURNAL COMPANY,

Defendant, Appellee.

Before Aldrich, Coffin and Bownes, Circuit Judges.

### MEMORANDUM AND ORDER

Entered: June 16, 1983

Per Curiam. The court grants plaintiffs' motion for clarification. In response, not to plaintiffs' question as phrased on page 9 thereof, but, more generally, to what the court meant,

1. The district court was entirely correct in observing that we did not order a new trial.

2. The court was essentially correct in considering plaintiffs "waived" any damage evidence that could reasonably have been discovered and was not offered. Basically plaintiffs must stand on the record.

3. Plaintiffs, however, could not be regarded as waiving evidence only thereafter available, and, since the delay was occasioned by defendant, plaintiffs should be the ones to benefit, if there be such.

Nothing herein shall prevent the court from requiring any such new evidence to be presented by offer of proof, deposition, etc., as it may determine.

By the Court,
Francis P. Scigliano
Clerk.