**LYNCH BUSINESS MACHINES, INC., Plaintiff,**

v.

**A.B. DICK COMPANY, Defendant.**

**No. C77–355A.**

United States District Court, N.D. Ohio, E.D.

March 30, 1984.

Walter A. Bates, Gwendolyne K. Parks, Arter & Hadden, Cleveland, Ohio, for plaintiff.

Anthony R. Moore, Carl L. Steinhouse, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

Plaintiff Lynch Business Machines, Inc. (Lynch) filed a complaint in this antitrust action on September 21, 1977. Lynch alleges that defendant A.B. Dick Company (A.B. Dick) violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18, in the events surrounding Lynch's termination as an A.B. Dick dealer. Lynch also alleged a breach of contract. On November 16, 1978, A.B. Dick filed its answer and a counterclaim against Lynch. The counterclaim alleges that Lynch never tendered payment of $4,126.70 to A.B. Dick for products sold and delivered to Lynch. Lynch filed its answer to the counterclaim on April 4, 1978.

Jurisdiction in this matter is based upon 28 U.S.C. §§ 1331 and 1332, and upon 15 U.S.C. § 15.

Pending before the Court is defendant A.B. Dick's motion for summary judgment filed on December 7, 1982.

Fed.R.Civ.P. 56 provides in pertinent part:

> A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
>
> *   *   *   *   *   *
>
> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The pleadings, exhibits, depositions, and affidavits in this matter provide the following undisputed facts.

Defendant A.B. Dick manufactures and sells office products, including various types of duplicating equipment. A.B. Dick distributes its products through a network of branch offices, dealers, and distributors. A.B. Dick's branch offices sell A.B. Dick products to end users. A.B. Dick's dealers operate under the branch offices and purchase A.B. Dick products as independent businesses and resell the products to end users. Dealers are not given exclusive territories. In areas where A.B. Dick has no branch office, A.B. Dick appoints distributors which are independent businesses operating in similar fashion to branch offices. A distributor has an exclusive territory to the extent that A.B. Dick agrees not to sell to any other person for wholesale distribution in the territory. A distributor may have dealers appointed under him. A dis-

tributor purchases products from A.B. Dick at slightly lower prices than dealers.

In 1964, James K. Lynch, Jr., sole shareholder and president of Lynch, acquired the Canton A.B. Dick distributorship.

In 1966, the Akron distributorship terminated when its owner, Lloyd Thomas, retired. A.B. Dick purchased the inventory, accounts receivable, equipment, and unfulfilled contracts at the request of Mr. Thomas. Using these assets, A.B. Dick established an A.B. Dick branch office in Akron. This branch office has never had a separate corporate existence from A.B. Dick.

In 1967, at the request of A.B. Dick, the Lynch Canton distributorship was changed to a dealership, operating under the Akron branch. A.B. Dick's internal documents show that between the years of 1969 and 1972 Lynch's business declined. A.B. Dick was dissatisfied with Lynch's performance and had communicated its concern to Lynch.

In 1971, A.B. Dick appointed two new dealers within the Canton territory. In addition, A.B. Dick assigned a salesman from the Akron branch office to sell offset equipment in the same area.

In June 1973, Mr. Lynch moved his A.B. Dick dealership into a farmhouse in a rural area so that it was no longer located in a commercial area. On June 26, 1973, representatives of A.B. Dick personally notified Lynch that the dealership would be terminated effective September 24, 1973, and delivered a draft termination letter. Several days later, Mr. Lynch received a signed formal termination letter showing an effective termination date of September 25, 1973. The dealership terminated on that September date.

■ Although the courts have expressed a clear reluctance to dispose of antitrust litigation in motions for summary judgment, a motion for summary judgment may be granted if plaintiff has failed to provide some factual basis upon which the elements of an antitrust violation may be reasonably inferred. *Smith v. Northern Michigan Hospitals, Inc.*, 703 F.2d 942,

948 (6th Cir.1983). The Sixth Circuit in *Smith* states that:

> Once the defendant has adequately rebutted the plaintiff's allegations by establishing legitimate alternative explanations for its conduct which disprove the inferences the plaintiffs seek to draw, then the plaintiffs must come forward with some "significant probative evidence tending to support the complaint." *First National Bank,* 391 U.S. [253] at 290, 88 S.Ct. [1575] at 1593 [20 L.Ed.2d 569].

*Id.*

Consequently, if A.B. Dick establishes alternative explanations for its conduct which disprove the inferences of antitrust violations which Lynch seeks to draw, then Lynch must come forward with some significant probative evidence to support its complaint. A.B. Dick contends that Lynch has failed to introduce any evidence of antitrust violations to rebut A.B. Dick's evidence of legitimate alternative explanations for all the antitrust allegations against it.

There are four counts in the complaint against A.B. Dick.

## COUNT I

■ Count I alleges that A.B. Dick's actions in acquiring the Akron distributorship in 1966 and terminating Lynch's dealership agreement in 1973 were part of a combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Section 1 of the Sherman Act proscribes a "contract, combination .... or conspiracy, in restraint of trade or commerce ...." 15 U.S.C. § 1. To establish a claim under Section 1, the plaintiff must establish that:

(1) the defendants contracted, combined or conspired among each other;

(2) the combination or conspiracy produced adverse, anti-competitive effects within relevant product and geographic markets;

(3) the objects of and conduct pursuant to the contract or conspiracy were illegal; and

(4) the plaintiff was injured as a proximate result of that conspiracy.

*Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1195–1196 (6th Cir. 1982).

■ Ordinarily, the inquiry into the legality of the restraint focuses on whether the restraint merely regulates and thereby promotes competition, or whether it is such as may suppress or even destroy competition. *Id.* at 1196. However, the courts have found some agreements to be illegal per se under Section 1 without inquiry into the anti-competitive effect of the restraint because the conduct itself is considered manifestly anti-competitive. *Id.* at 1196. Vertical price restraints in which the manufacturer conspires or contracts with distributors or dealers to set minimum or maximum resale prices fall within the category of per se violations of Section 1. *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911); *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968).

A.B. Dick contends that the essence of a Section 1 violation is concerted action so that A.B. Dick's unilateral conduct in terminating Lynch as a dealer cannot violate Section 1. Lynch contends that A.B. Dick conspired with Lynch itself to maintain a maximum resale price on A.B. Dick duplicating equipment which, Lynch asserts, is a per se violation of Section 1.

The Sixth Circuit has consistently held that a unilateral refusal to deal cannot violate Section 1 because the requisite concerted action is absent. *Barnosky Oils, Inc. v. Union Oil Company of California*, 665 F.2d 74, 77 (6th Cir.1981); *Hawkins v. Holiday Inns, Inc.*, 634 F.2d 342, 344 (6th Cir.1980), *cert. denied*, 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981); *Byars v. Bluff City News Co.*, 609 F.2d 843, 854 (6th Cir.1979).

■ The evidence in this action indicates that William L. Pistor, branch manager of the A.B. Dick Akron branch office, unilaterally determined that Lynch would be terminated after consulting with other A.B. Dick employees. Therefore, any concerted action involved in the termination of the Lynch dealership occurred among A.B. Dick employees and its own branch office.

However, a corporation cannot conspire with itself or its own divisions for purposes of Section 1. *Joseph E. Seagram & Sons v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71, 82–84 (9th Cir.1969), *cert. denied*, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). Likewise, a corporation cannot conspire with its own employees for purposes of Section 1. *Walker v. Providence Journal Company*, 493 F.2d 82, 87 (1st Cir. 1974). Therefore, in the instant action, A.B. Dick's evidence that it unilaterally terminated Lynch, defeats a Section 1 claim because the requisite combination or conspiracy is lacking, unless Lynch has provided other evidence to indicate that a person or entity outside of A.B. Dick conspired to terminate Lynch. Lynch provides no such evidence. Accordingly, Lynch's Section 1 claim in Count I against A.B. Dick for terminating the Lynch dealership fails.

■ Plaintiff also alleges in Count I that A.B. Dick's acquisition of the Akron branch was "part of a combination or conspiracy in restraint of trade" in violation of Section 1 of the Sherman Act. This claim lacks merit for two reasons. First, A.B. Dick acquired the Akron branch in 1966. Title 15 U.S.C. § 16(b) provides a four-year statute of limitations in antitrust suits. The purchase of the Akron branch's assets occurred in 1966, eleven years prior to the commencement of this action. Only the termination of Lynch by A.B. Dick falls within the permissible four years prior to the 1977 filing of the complaint. A.B. Dick has offered evidence that Lynch was terminated because of his poor sales performance. Lynch has offered no evidence to show that the termination was in any way connected to the 1966 acquisition of the Akron branch. Therefore, the claim that the acquisition restrained trade in violation

of Section 1 is barred by the statute of limitations.

Furthermore, the conspiracy requirement for Section 1 cannot be met unless Lloyd Thomas, previous owner of the Akron distributorship, is considered a co-conspirator. A.B. Dick's evidence indicates that A.B. Dick purchased the Akron distributorship assets at the request of Mr. Thomas upon his retirement. A.B. Dick used these assets to establish a branch office. No combination or conspiracy arises from this evidence, and Lynch has provided no other evidence to indicate that Lloyd Thomas conspired with A.B. Dick to restrain trade.

Since Lynch has failed to provide some factual basis for the charges of conspiracy to terminate and acquiring the distributorship in restraint of trade, defendant is entitled to judgment as a matter of law as to these allegations in Count I of the complaint.

Plaintiff contends, however, that A.B. Dick violated Section 1 in a vertical price maintenance conspiracy. Relying upon the United States Supreme Court case of *Albrecht v. Herald*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), plaintiff contends that A.B. Dick violated Section 1 by conspiring with Lynch to set maximum resale prices, a per se violation of Section 1. This Court disagrees with this contention for the following reasons.

■ First, Count I of the complaint fails to allege that A.B. Dick engaged in a resale price maintenance agreement. Instead, Count I alleges Section 1 antitrust violations flowing only from Lynch's termination in 1973 and the acquisition of the Akron branch in 1966.

■ Furthermore, defendant sought through interrogatories to obtain a particularized statement of plaintiff's Count I claims. In interrogatory 40 of defendant's Interrogatories 1–56, defendant requested that plaintiff state all facts and circumstances involved in the statement: "Defendant continuously interfered with plaintiff's operation." This allegation from Count I provides the only basis upon which

a resale price maintenance claim could be based. In its responses filed May 23, 1978, plaintiff failed to make any reference to facts which would indicate a resale price maintenance agreement.

The first written indication that Lynch premised its Count I allegation upon resale price maintenance appeared in plaintiff's reply brief to defendant's motion for summary judgment, filed January 18, 1983.

Under similar circumstances, courts have refused to allow plaintiffs to amend the complaint to switch to a retail price maintenance theory, when they had failed to plead the theory. The courts reasoned that the value of summary judgment procedures would be dissipated if a party were free to shift theories in an effort to defeat a motion for summary judgment. *In re Midwest Milk Monopolization Litigation*, 529 F.Supp. 1326, 1342–43 (W.D.Mo.1982); *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1161 (5th Cir.1979).

Accordingly, in the instant action, Lynch cannot try a resale price maintenance claim which it did not plead or later identify in discovery but now attempts to raise to defeat a motion for summary judgment.

■ Furthermore, plaintiff bases its claim of resale price maintenance on incidents in 1968 in which Joe Finelli, an A.B. Dick salesman, refused to honor the prices set by Lynch which led Lynch to lower his prices. Title 15 U.S.C. § 16(b) provides a four-year statute of limitations in antitrust suits. The refusal to honor Lynch's prices occurred in 1968, nine years prior to the filing of the complaint in 1977. Only the termination of Lynch in 1973 falls within the permissible four years. A.B. Dick has offered evidence that Lynch was terminated because of his poor sales performance. Lynch has offered no evidence to show that the termination was in any way connected to the 1968 incidents. Therefore, any allegation of resale price maintenance based on the activities in 1968 is barred by the statute of limitations.

■ Finally, Lynch erroneously construes the facts surrounding the lowering

of his prices in 1968 as an agreement to set a maximum resale price. James Lynch in his affidavit, paragraph 32, represents the facts surrounding his lowering of prices as follows:

> (32) I had raised the retail prices in order to maintain the same profit margins which the distributorship had received on the sale of equipment and supplies. This was necessary to maintain three salesmen on the force. Joe Finelli, the Akron representative, would not honor these prices and continued to "sell machines" at the A.B. Dick Company's listed retail prices or lower rather than at the higher price which I felt was necessary in order to maintain the business. After discussions of the higher prices with Mr. Finelli and Mr. Tero, I was forced to rescind the higher retail prices.

These facts indicate that the A.B. Dick Akron branch sales people refused to enter into a price-fixing agreement with Lynch which would have been a per se violation of Section 1 of the Sherman Act. These facts further indicate that Lynch lowered its prices in order to compete with A.B. Dick's lower prices when A.B. Dick refused to honor Lynch's higher prices. The facts, therefore, do not support a claim that A.B. Dick and Lynch conspired to set maximum resale prices. Therefore, Lynch's contention that A.B. Dick violated Section 1 based on a resale price maintenance agreement theory fails.

Thus, A.B. Dick is entitled to judgment as a matter of law as to Lynch's charges in Count I of the complaint of conspiracy to terminate Lynch and acquire the Akron distributorship, both in restraint of trade.

### COUNT II

Count II alleges that A.B. Dick's actions in acquiring the Akron distributorship in 1966 and terminating Lynch's dealer contract in 1973 were a monopolization, an attempt to monopolize, or a conspiracy to monopolize the marketing and distribution of products in Lynch's Canton territory in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Section 2 prohibits monopo-

lization, attempts to monopolize, and combinations and conspiracies to monopolize. 15 U.S.C. § 2.

As previously discussed, plaintiff has failed to provide any substantial evidence in support of a conspiracy charge with regard to either the termination of Lynch or the acquisition of the Akron distributorship. Therefore, the "conspiracy to monopolize" claim in Count II of the complaint under Section 2 lacks merit.

The Court finds that the claims of "monopolization" and "attempts to monopolize" also fail as a matter of law for the following reasons.

■ First, A.B. Dick lacks the requisite monopoly power necessary to find a "monopolization" violation. The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from the growth or development as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

■ Monopoly power cannot be shown through a manufacturer's control of its own product, because a manufacturer cannot monopolize its own product. *Dunn & Mavis, Inc. v. Nu-Car Driveway, Inc.*, 691 F.2d 241, 244 (6th Cir.1982). Instead, plaintiff must show that defendant controlled a predominant share of the product market in the relevant geographic area. *United States v. Grinnell Corp.*, 384 U.S. at 571, 86 S.Ct. at 1704. For purposes of a Section 2 violation, plaintiff has failed to show the requisite monopoly power if defendant has less than 50 percent of the product market in the geographic area. *Mowery v. Standard Oil Company of Ohio*, 463 F.Supp. 762, 777 (N.D.Ohio 1976), *aff'd without opinion*, 590 F.2d 335 (6th Cir.1978); *Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 207 (5th Cir.1969).

■ In the instant action, the undisputed evidence shows that in 1972 A.B. Dick

had a market share in the United States of approximately 5 percent in the broad category of duplicating products. If the duplicating products market is broken down into several different product markets, A.B. Dick's nationwide product market in 1972 was as follows: 32 percent of all spirit duplicators, 31 percent of all mimeograph machines, and 33 percent of all offset machines. Furthermore, A.B. Dick's percentage of sales in Lynch's Canton dealership territory was lower than its nationwide percentage in all categories. Therefore, A.B. Dick's evidence indicates that A.B. Dick had no share of any duplicating product market that exceeded 35 percent, far below the 50 percent required in order to find monopoly power. Lynch has provided no evidence to the contrary. Therefore, A.B. Dick lacks the requisite element of monopoly power and is entitled to judgment as a matter of law as to the Count II charge of monopolization.

■ As to the claim of "attempt to monopolize" under Section 2, Lynch has failed to show two of the three essential elements of an attempt to monopolize violation. Since an attempt to monopolize pertains to an unsuccessful monopolist, the plaintiff need not show that the defendant possessed monopoly power in the relevant market. Instead, to prove an attempt to monopolize under Section 2, the plaintiff must show that the defendant had the power to monopolize, the specific intent to monopolize, and that the attempt posed a "dangerous probability" that defendant could establish a monopoly. *Mowery v. Standard Oil Company of Ohio*, 463 F.Supp. at 772.

In light of A.B. Dick's evidence to the contrary, Lynch provides no evidence that A.B. Dick had the power to establish a monopoly or a "dangerous probability" that A.B. Dick would achieve monopoly power. In the instant case, A.B. Dick held 5 percent of the national market in duplicating machines in 1972, and less than 35 percent of the market in each category of duplicating equipment which A.B. Dick sold. In each submarket, A.B. Dick had

competitors with as large or larger market share than A.B. Dick. A.B. Dick's competitive position in Lynch's territory fell below the nationwide competitive position. James Lynch's deposition testimony indicated that interbrand competition in his territory was vigorous. A.B. Dick added new dealers in Lynch's territory in an attempt to increase its flagging market share in Lynch's territory. Lynch offers no evidence to refute this evidence provided by A.B. Dick.

Thus, based on A.B. Dick's market share, the market share of A.B. Dick's competitors, and evidence of competition within the Lynch territory, A.B. Dick lacked the power to monopolize, i.e., the power to raise prices or exclude competition. This same evidence indicates that A.B. Dick was far from reaching the point where there was a "dangerous probability" that A.B. Dick would achieve monopoly power.

■ Finally, Lynch alleges in Count II that A.B. Dick attempted to monopolize its own product. Since a manufacturer cannot monopolize its own product, *Dunn & Mavis, Inc. v. Nu-Car Driveway, Inc.*, 691 F.2d at 244, neither can it attempt to monopolize its own product. The courts have consistently held that a plaintiff cannot be punished for attempting to do what, if accomplished, would be legal. *C.f. Acme Precision Products, Inc. v. American Alloys Corp.*, 484 F.2d 1237, 1240 (8th Cir.1973); *Diehl & Sons, Inc. v. International Harvester Co.*, 426 F.Supp. 110, 121 (E.D.N.Y. 1976).

In light of A.B. Dick's evidence to the contrary, Lynch has failed to demonstrate substantial evidence that A.B. Dick monopolized, attempted to monopolize, or conspired to monopolize distribution of A.B. Dick products when it acquired the Akron distributorship in 1966 and terminated Lynch's dealer contract in 1973. A.B. Dick is therefore entitled to judgment as a matter of law as to Count II of the complaint.

## COUNT III

■ Count III alleges that A.B. Dick's acquisition of the Akron distributorship in

1966 had the effect of substantially lessening competition or tended to create a monopoly in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. Section 7 proscribes "the acquisition of stock where the effect of the acquisition may be to substantially lessen competition or tend to create a monopoly." 15 U.S.C. § 18. The critical question in Section 7 cases is whether the probable future effect of the transaction will be substantially to lessen competition. *Gulf & Western Industries, Inc.*, 476 F.2d 687, 694 (2d Cir.1973); *Brown Shoe Co. v. United States*, 370 U.S. 294, 332, 82 S.Ct. 1502, 1527, 8 L.Ed.2d 510 (1962).

The threshold task in determining whether an acquisition will lessen competition is to define the relevant product and geographic markets. *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 618, 94 S.Ct. 2856, 2868, 41 L.Ed.2d 978 (1974). As defined by Lynch, the relevant market territory consists of Stark, Wayne, Coschocton, Tuscarawas, Holmes, and Carroll Counties. The Akron distributor at the time he retired had an exclusive territory consisting of Summit, Medina, and Portage Counties. When A.B. Dick established the Akron branch in 1966, it performed the same retail sales and service in those three counties that the Akron distributor had previously performed. Therefore, the acquisition of the Akron branch did not involve Lynch's territory. Lynch must, therefore, show that the establishment of a branch office in Akron lessened competition in Lynch's territory.

The evidence indicates that prior to 1967 Lynch, as an exclusive distributor, was the only retail seller of A.B. Dick products in the Lynch territory. Lynch's complaint indicates that when Lynch was changed from an exclusive distributorship to a dealership, A.B. Dick "actively competed with plaintiff" and that "salesmen and other dealers from and under defendant's distribution branch were sent into the market territory actively to compete with and take over plaintiff's accounts." The evidence also indicates that A.B. Dick's actions in introducing new retail sellers to the Lynch territory and terminating Lynch were taken to make A.B. Dick more competitive against other manufacturers of duplicating products. Therefore, the only effect that the establishment of the branch office had upon the Lynch territory was to increase both intrabrand and interbrand competition. Lynch has failed to provide evidence to rebut A.B. Dick's evidence that the acquisition enhanced rather than lessened competition. Accordingly, A.B. Dick is entitled to judgment as a matter of law as to Count III of the complaint.

## COUNT IV

Count IV of the complaint alleges that A.B. Dick breached its contract with plaintiff in giving plaintiff unreasonably short notice that A.B. Dick was terminating its dealer contract with Lynch.

The dealership contract between Lynch and A.B. Dick, dated October 23, 1970, contains the following termination clause:

> This Dealer agreement shall remain in full force and effect from the date hereof until terminated by either party giving the other party ninety days' notice in writing of its desire to do so. Such notice shall be considered as delivered when mailed.

James Lynch initially received notice of termination upon receipt of a draft of a termination letter on June 26, 1973. Several days later, Mr. Lynch received the signed version of the same letter. The latter version of the letter set a termination date of September 25, 1973, ninety days after the initial notification. Therefore, A.B. Dick complied with the terms of the dealer agreement by giving 90 days' notice of termination of the agreement. Thus, there remains no material issue of fact as to the breach of contract claim, and A.B. Dick is entitled to judgment as a matter of law as to Count IV of the complaint.

Lynch has failed to provide relevant probative evidence to negate A.B. Dick's evidence indicating that A.B. Dick did not violate the antitrust laws as alleged in Counts I, II, III, and IV of the complaint.

Furthermore, as to Count IV of the complaint, A.B. Dick complied with the terms of the dealership agreement in terminating Lynch. The Court, therefore, grants A.B. Dick's motion for summary judgment as to Counts I, II, III, and IV of the complaint in this action. The Court hereby dismisses Lynch's complaint.

## A.B. DICK'S COUNTERCLAIM

▬ Remaining before the Court is defendant A.B. Dick's counterclaim filed November 16, 1977 in which A.B. Dick alleges that plaintiff Lynch never tendered payment of $4,126.70 plus interest to A.B. Dick for products sold and delivered to Lynch. Jurisdiction in this action is based upon 28 U.S.C. § 1331, federal question, 28 U.S.C. § 1332, diversity of citizenship, and 15 U.S.C. § 15, which allows any persons injured by federal antitrust violations to sue in district courts of the United States. Jurisdiction based on antitrust violations or a federal question no longer exists because the Court granted summary judgment as to all counts of the complaint.

A.B. Dick's counterclaim is a state breach of contract action which may be brought in federal court if certain prerequisites are met. Title 28 U.S.C. § 1332 allows diversity actions in federal court where the matter in controversy exceeds the sum of $10,000, exclusive of interest and costs. A.B. Dick, in its counterclaim, seeks the amount of $4,126.70 from plaintiff. Therefore, the amount in controversy does not meet the $10,000 requisite amount required under 28 U.S.C. § 1332. Accordingly, this Court lacks subject matter jurisdiction to consider A.B. Dick's counterclaim under the diversity statute. Furthermore, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), held that if the federal claims in an action are dismissed before trial, the state claims should be dismissed as well. Accordingly, the Court dismisses A.B. Dick's state counterclaim for breach of contract.

IT IS SO ORDERED.